No. 25-50563

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

FUND TEXAS CHOICE, et al.,

*Plaintiffs-Appellants*,

v.

DESKI, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Western District of Texas (Austin Division)
No. 1:22-cv-859-RP

_____

## APPELLANTS' OPENING BRIEF

THOMPSON COBURN LLP

/s/ *Elizabeth G. Myers*
Elizabeth G. Myers #24047767 TX
John P. Atkins #24097326 TX
Allyn Jaqua Lowell #24064143 TX
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201

## CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following persons and entities have an interest in the outcome of this case.

| Plaintiffs-Appellants | Plaintiffs-Appellants' Counsel |
|---|---|
| Fund Texas Choice | Elizabeth G. Myers |
| Buckle Bunnies Fund | Allyn Jaqua Lowell |
| Clinic Access Support Network | John Atkins |
| Frontera Fund | THOMPSON COBURN LLP |
| Ghazaleh Moayedi | |
| Jane's Due Process | Alex Wilson Albright |
| Lilith Fund for Reproductive Equity | Kevin H. Dubose |
| North Texas Equal Access Fund | Kirsten M. Castañeda |
| The Afiya Center | ALEXANDER DUBOSE & JEFFERSON LLP |
| West Fund | |

| Defendants-Appellees | Defendants-Appellees' Counsel |
|---|---|
| Jose Garza | Cynthia Contreras Gutierrez |
| Julie Renken | CONTRERAS GUTIERREZ AND ASSOCIATES |
| Susan R. Deski | |
| Wiley B. "Sonny" McAfee | Lisa V. Cubriel |
| Fred H. Weber | Robert W. Piatt III |
| Joe Gonzales | Bexar County District Attorney's Office |
| Toribio Palacios | |
| K. Sunshine Stanek | Leigh Ann Tognetti |
| Gocha Allen Ramirez | Victor Manuel Garza |
| James Montoya | Hidalgo County District Attorney's Office |
| Richard E. Glaser | |
| Ryan Sinclair | J. Eric Magee |
| Jacob Putman | ALLISON, BASS & MAGEE, LLP |
| | |
| | Heather Gebelin Hacker |
| | HACKER STEPHENS LLP |
| | |
| | Leslie W. Dippel |
| | Cynthia Wilson Veidt |
| | Elaine Agnes Casas |

| | Travis County District Attorney's Office<br><br>John Untereker<br>Jennifer K. Irlbeck<br>Lubbock County District Attorney's Office |
| --- | --- |

/s/ *Elizabeth G. Myers*
Elizabeth G. Myers
2100 Ross Avenue,
Suite 2200
Dallas, Texas 75201
emyers@thompsoncoburn.com
972.629.7100

*Attorney for Plaintiffs-Appellants*

- ii -

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs-Appellants respectfully request oral argument. This appeal addresses critical issues of pre-enforcement challenges to state statutes in order to secure constitutional rights and the *Ex parte Young* exception to sovereign immunity. Because of the long factual and procedural background of this case and the important issues the Court must resolve, Plaintiffs-Appellants believe oral argument would assist the Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS ................................................................... iv

TABLE OF AUTHORITIES ................................................................ vi

STATEMENT OF JURISDICTION ........................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .................................... 2

STATEMENT OF THE CASE ............................................................... 3

SUMMARY OF THE ARGUMENT ......................................................... 6

ARGUMENT AND AUTHORITIES ......................................................... 8

    I.      *Ex parte Young* Allows a Party to Challenge a Non-Moribund Statute on Constitutional Grounds Before the Statute is Enforced Against that Party. ....................................................... 8

    II.    Appellants Satisfy the *Ex parte Young* Standard. ............................... 9

        A.    The record contains more than a scintilla of enforcement action by Appellees. ............................................... 9

        B.    The Pre-*Roe* Statutes were enforced by Texas district attorneys and county attorneys until *Roe v. Wade* was decided. ............................................... 14

        C.    A presumption of enforcement attaches to the Pre-*Roe* Statutes because they are non-moribund laws. ...................... 15

    III.   The District Court Erred When it Held That *Mi Familia Vota v. Ogg* Precludes Appellants' Claims. ..................................... 17

        A.    This Court's immunity decisions make clear that *Mi Familia Vota v. Ogg* is limited to the facts at issue in that case. ............................................... 18

B.     Appellees' silence in response to direct questions demonstrates a willingness to enforce the challenged laws. ................................................................................22

C.     Appellees have a duty to enforce the challenged provision and the discretion discussed in *Mi Familia Vota v. Ogg* no longer exists. ....................................24

D.     The District Court's Application of *Mi Familia Vota v. Ogg* eliminates pre-enforcement challenges that are guaranteed by *Ex parte Young* and its progeny. ........................26

IV.     To the Extent *Mi Familia Vota v. Ogg* Bars Appellants' Claims, it is Wrongly Decided, Conflicts with U.S. Supreme Court Precedent and this Court's Precedent, and Should Be Overruled. ...............................................................................28

CONCLUSION ........................................................................................32

CERTIFICATE OF COMPLIANCE ....................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507 (5th Cir. 2017) ................................................................................ 8, 9, 19, 26

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) ......................11

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024)................................ passim

*Cave v. State*, 26 S.W. 503 (1894)........................................................................14

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) .................................. 8, 9, 10

*Cortez v. State*, 161 Tex. Crim. 77, 275 S.W.2d 123 (1954)...................................15

*Crissman v. State*, 93 Tex. Crim. 15, 245 S.W. 438 (1922)...................................14

*Crossett v. State*, 90 Tex. Crim. 440, 235 S.W. 599 (1921) ...................................14

*Davis v. State*, 168 Tex. Crim. 399, 328 S.W.2d 315 (1959) .................................15

*Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) ..................3

*Earnest v. State*, 83 Tex. Crim. 257, 202 S.W. 739 (1918)....................................14

*Earnest v. State*, 87 Tex. Crim. 651, 224 S.W. 777 (1919)....................................14

*Ex parte Vick*, 106 Tex. Crim. 373, 292 S.W. 889 (1927) .....................................15

*Ex parte Young*, 209 U.S. 123 (1908)......................................................... 6, 8, 9, 28

*Fondren v. State*, 74 Tex. Crim. 552, 169 S.W. 411 (1914)...................................14

*Fund Texas Choice v. Deski*, 790 F.Supp.3d 534 (W.D. Tex. 2025) .......................5

*Giles v. City of Dallas*, 539 Fed. Appx. 537 (5th Cir. 2013)...................................12

*Gray v. State*, 77 Tex. Crim. 221, 178 S.W. 337 (1915) ........................................14

*Hammett v. State*, 84 Tex. Crim. 635, 209 S.W. 661 (1919)...................................14

*Healthy Vision Ass'n v. Abbott*, 138 F.4th 385 (5th Cir. 2025)....................... passim

*Hunter v. State*, 81 Tex. Crim. 471, 196 S.W. 820 (1917) ......................................14

*Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261 (1997)...............................29

*In re Paxton*, 60 F.4th 252 (5th Cir. 2023) .................................................. 4, 13, 24

*Institute for Free Speech v. Johnson*, 148 F.4th 318 (5th Cir. 2025) ............... 21, 31

*Jackson v. State*, 55 Tex. Crim. 79, 115 S.W. 262 (1908)......................................14

*Jackson v. Wright*, 82 F.4th 362 (5th Cir. 2023) .........................................................9

*Jarquin v. State*, 155 Tex. Crim. 140, 232 S.W.2d 736 (1950) ..............................15

*King v. State*, 35 Tex. Crim. 472, 34 S.W. 282 (1896).........................................14

*La Union del Pueblo Entero v. Nelson*, No. 22-50775, 2025 WL 3771384 (5th Cir. Dec. 31, 2025)...................................................................................................29

*Limicy v. State*, 148 Tex. Crim. 130, 185 S.W.2d 571 (1945)................................15

*Link v. State*, 73 Tex. Crim. 82, 164 S.W. 987 (1914) ...........................................14

*Mayberry v. State*, 160 Tex. Crim. 432, 271 S.W.2d 635 (1954)...........................15

*McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004).......................................................3

*Mi Familia Vota v. Ogg,* 105 F.4th 313 (5th Cir. 2024)................................. passim

*Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959 (5th Cir. 2014) 8

*Moore v. State*, 37 Tex. Crim. 552, 40 S.W. 287 (1897).........................................14

*Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770 (5th Cir. 2024) ..........11

*Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318 (5th Cir. 2008) ................................8

*Owens v. State*, 162 Tex. Crim. 212, 283 S.W.2d 749 (1955)................................15

*Reum v. State*, 49 Tex. Crim. 125, 90 S.W. 1109 (1905) ........................................14

*Roe v. Wade*, 410 U.S. 113 (1973)..............................................................................3

*Shaw v. State*, 73 Tex. Crim. 337, 165 S.W. 930 (1914)...........................................14

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020), *as revised* (Oct. 30, 2020) ..................................................................................................................................17

*Tex. Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) ................... 9, 19, 29

*Thompson v. State*, 493 S.W.2d 913 (Tex. Crim. App. 1971)..................................15

*Tonnahill v. State*, 84 Tex. Crim. 517, 208 S.W. 516 (1919)..................................14

*Umphress v. Hall*, 133 F.4th 455 (5th Cir. 2025) ....................................................22

*Veevers v. State*, 354 S.W.2d 161, 171 (Tex. Crim. App. 1962)............................15

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635 (2002) ................28

*Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247 (2011) ......28

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) ................................11

*Wandell v. State*, 25 S.W. 27 (Tex. Crim. App. 1894) .............................................14

*Welch v. State*, 159 Tex. Crim. 352, 264 S.W.2d 100 (1953) .................................15

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021).........................................30

*Willingham v. State*, 25 S.W. 424 (1894) ................................................................14

*Woodlands Pride, Inc. v. Paxton*, 157 F.4th 775 (5th Cir. 2025)............................29

**STATUTES**

TEX. CODE CRIM. PRO. ANN. ART. 2A.102(a)..........................................................21

TEX. REV. CIV. STAT. ANN. ART. 4512.2 .................................................................3

TEXAS LOCAL GOVERNMENT CODE § 87.011.............................................. 4, 12, 25

TEXAS LOCAL GOVERNMENT CODE § 87.015..........................................................25

## STATEMENT OF JURISDICTION

This is an appeal from the final decision of a district court and this Court has jurisdiction under 28 U.S.C. § 1291. Notice of appeal was timely filed in accordance with Rule 4(a) of the Federal Rules of Appellate Procedure.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether sovereign immunity bars Appellants' claims against Appellees challenging the constitutionality of the pre-*Roe* criminal abortion statutes ("Pre-*Roe* Statutes") when:

(1) Those statutes have not been recently enforced due to intervening (but now overruled) U.S. Supreme Court and Fifth Circuit precedent;

(2) The Appellees have the authority to enforce the Pre-*Roe* Statutes if they are valid;

(3) State actors have declared the laws enforceable; and

(4) Appellees are bound by state law to not refuse to prosecute certain classes of offense.

## STATEMENT OF THE CASE

When *Roe v. Wade*, 410 U.S. 113 (1973) was overruled by the U.S. Supreme Court in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), the effect on state statutes previously unenforceable under *Roe* was not immediately clear. In Texas, this included the very statues that *Roe* declared void, and which this Court held in 2005 to have been repealed by implication because Texas chose to regulate legal abortion through other statutes following *Roe*. *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004), *cert denied* 543 U.S. 1154 (2005). One of those statutes, Tex. Rev. Civ. Stat. Ann. Art. 4512.2, creates felony liability for anyone who "furnishes the means for procuring an abortion."[1] Since *Dobbs,* the Texas Attorney General and Texas legislators have repeatedly claimed that Article 4512.2 is once again effective and "good law."[2]

Appellants are seven nonprofit organizations and one doctor who filed suit to obtain declaratory and injunctive relief that their desire to continue assisting pregnant Texans to obtain legal abortions outside of Texas (and where abortion remains legal) is protected under the U.S. Constitution, and/or not prohibited by the Pre-*Roe* Statutes. ROA.94-95. Appellants sued several district attorneys, all of whom have authority to enforce Texas's criminal laws, including the Pre-*Roe*

---

[1] Article 4512.2 is codified in the Texas Civil Statutes, but imposes criminal liability.
[2] ROA.2136; ROA.2115-2117; ROA.163-165; ROA.168-174; ROA.328-336.

Statutes if they are valid. ROA.104. Appellants assert that Article 4512.2 violates their rights under the First and Fourteenth Amendments to the U.S. Constitution. ROA.94.

Appellees have all refused to disavow an intention to enforce the Pre-*Roe* Statutes against Appellants. ROA.18682. Some have also made statements or taken actions affirmatively suggesting they will or must enforce these laws. ROA.18688-18689; ROA.17248. Another statute specifically prohibits all of them from deciding *not* to enforce Texas's abortion laws. TEX. LOC. GOV'T CODE ANN. § 87.011(3)(B); ROA.18687-18688.

The District Court, after initially denying certain Defendants-Appellees' motions to dismiss,[3] ultimately granted their summary judgment motions and motions for judgment on the pleadings based on this Court's decision in *Mi Familia Vota v. Ogg,* 105 F.4th 313, 330-331 (5th Cir. 2024). ROA.18845-18866. The District Court held that it lacked jurisdiction and that Appellants could not maintain

---

[3] This Court also strongly suggested that Appellants' claims could proceed against a party with the power to enforce the Pre-*Roe* Statutes in 2023. *In re Paxton*, 60 F.4th 252, 257 (5th Cir. 2023) (holding a deposition of Attorney General Paxton to investigate his willingness to enforce certain statutes was unnecessary, because whether *Ex parte Young* applied "turns principally on whether Paxton 'is statutorily tasked with enforcing the challenged law.'"); *see also id.* at 262 (Higginbotham, J., concurring) ("The point is that on the record at hand a trier of fact could find there is sufficient evidence of an unsettling and chilling want of clarity in statements by officials with enforcement authority made against a chorus of state officials without enforcement power to allow this case to proceed.").

their suit because pre-enforcement review of Article 4512.2 would only be available if and when a district attorney took enforcement action against one of them or directly threatened to do so, creating a condition precedent that effectively eliminates pre-enforcement review of criminal statutes altogether, and which conflicts with multiple precedents of both this Court and the U.S. Supreme Court.[4] ROA.18860-18865.

---

[4] As the District Court noted in its order: "the Court fears that *Ogg* makes *Ex parte Young* easily avoidable and severely limits plaintiffs' ability to seek pre-enforcement review of constitutional violations, [but] the Court is bound by the opinion." *Fund Texas Choice v. Deski*, 790 F.Supp.3d 534, 550 (W.D. Tex. 2025).

## SUMMARY OF THE ARGUMENT

This Court should reverse the District Court because it misunderstood this Court's precedent, including *Ogg*, in three ways.

First, the District Court determined that *Ogg* created essentially a *per se* rule that a district attorney cannot be a proper defendant under *Ex parte Young*, 209 U.S. 123 (1908), without first publicly stating or threatening enforcement of the challenged law. This Court's precedent shows that the amount of enforcement necessary is context dependent, and that there is no such bright line. *See infra*, § I.

Second, the District Court failed to give sufficient weight to the actual history of enforcement of the Pre-*Roe* Statutes—the statutes challenged by Appellants. While the Pre-*Roe* Statutes were not enforced during the period *Roe* prohibited enforcement, they were regularly enforced before that by district (and county) attorneys like Appellees. *See infra*, § II.

Third, the District Court failed to give sufficient weight to the factual distinctions between this case and *Ogg*, including: (1) a new statute constraining the discretion of district attorneys; (2) the backdrop of non-enforcing state officials publicly and repeatedly claiming that the law would be enforced; and (3) all of the Appellees' willful—rather than passive—silence when asked directly about enforcement of the challenged laws. These distinctions put this case outside of *Ogg*'s ambit, and well within the scope of *Ex parte Young*. *See infra*, § III.

Finally, to the extent the District Court's reading and application of *Ogg* was not error, *Ogg* conflicts with *Ex parte Young* and its progeny, including precedent in this Circuit. If the District Court construed and applied *Ogg* correctly, Appellees respectfully submit that *Ogg* was wrongly decided and should be overruled. *See infra*, § IV.

## ARGUMENT AND AUTHORITIES

**I.** ***Ex parte Young*** **Allows a Party to Challenge a Non-Moribund Statute on Constitutional Grounds Before the Statute is Enforced Against that Party.**

The Eleventh Amendment bestows immunity from suit on states, state agencies, and state officials in their official capacity, "unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). *Ex parte Young* provides a limited exception to the requirement that a state waive its sovereign immunity for suits in which a party seeks prospective injunctive or declaratory relief against state officials in their official capacity for ongoing violations of federal law. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908); *see also Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 321 (5th Cir. 2008) ("Pursuant to the *Ex parte Young* exception, the Eleventh Amendment is not a bar to suits for prospective relief against a state employee acting in his official capacity."). "For the exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Ex parte Young*, 209 U.S. at 157); *see also Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 517 (5th Cir. 2017).

As the U.S. Supreme Court explained in *Ex parte Young*, the "connection" requirement is neither complicated nor difficult to understand: "[t]he fact that the

state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Ex parte Young*, 209 U.S. at 157.

In the Fifth Circuit, the "connection" requirement has often been interpreted to contain a further imminence or willingness requirement, to ensure that a plaintiff's fear of enforcement is reasonable. To satisfy this "demonstrated willingness" element, there need be only a "scintilla of enforcement by the relevant state official." *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023); *City of Austin,* 943 F.3d at 1002 (quotations omitted); *see also Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024) (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)). Imminent enforcement or actual threats of imminent enforcement are not required. *Air Evac EMS*, 851 F.3d at 519 (mere duty to implement and effectuate challenged reimbursement scheme was sufficient for *Ex parte Young*, regardless of any threat of enforcement).

## II.   Appellants Satisfy the *Ex parte Young* Standard.

### A.   The record contains more than a scintilla of enforcement action by Appellees.

Because Appellants brought a pre-enforcement challenge to the enforcement of a non-moribund law, they need only demonstrate "some scintilla" of affirmative

action by Appellees. *City of Austin,* 943 F.3d at 1002.[5] The record confirms that Appellants more than satisfied that burden.

First, on March 3, 2023, following the District Court's entry of a Preliminary Injunction against certain Appellees, Appellants' counsel sent letters to counsel for Appellees Palacios, Ramirez, Stanek, Hicks (now Montoya), White, and Gonzales requesting confirmation that their clients did not intend to investigate or prosecute Appellants for providing funding assistance or practical support to pregnant Texans to help them travel out of Texas to obtain abortion care where that care remains legal. ROA.17267-17269, 17270-17284. None of those Appellees responded.[6]

Second, in September 2023, after another set of defendants served discovery that sought information regarding Appellants' provision of funding and practical support to Texans seeking abortion care out of state, Appellants' counsel emailed counsel for every Appellee and asked whether each of their clients believed the conduct about which discovery had been sought was criminal under the Pre-*Roe*

---

[5]Actual recent enforcement of the Pre-*Roe* Statutes would impose an impossible standard because enforcement of those laws specifically was prohibited by *Roe*. As discussed in Section II.B, *infra*, the Pre-*Roe* Statutes were enforced before they were declared void in *Roe.*

[6] D.A. White, who never appeared in the trial court, responded but did not provide a substantive answer. *Deski*, 790 F. Supp. 3d at 551 n. 8. Appellees voluntarily dismissed D.A. White after the district court granted summary judgment in favor of Appellees. The letters, located at ROA.17270-17284, originally each included an enclosed copy of ROA.4237-4288.

Statutes, and whether they would agree not to prosecute Appellants based on the information disclosed in response to the discovery. ROA.17244-17255, 17267-17269, 17285-17323. Counsel for each Appellee refused to answer, claiming the request was improper discovery. *Id*.

Thus, every Appellee refused—more than once—to disavow enforcement of the Pre-*Roe* Statutes against Appellants. Appellees' refusals, particularly when the challenges asserted by Appellants arise under the First Amendment, satisfies the scintilla of enforcement standard. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) ("[T]he State has not disavowed any intention of invoking the criminal penalty . . . Appellees are thus not without some reason in fearing prosecution for violation of the ban . . ."); *see also Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024), *cert. denied sub nom*. 145 S. Ct. 140, 220 L. Ed. 2d 13 (2024) ("Unlike in other constitutional contexts, in the speech context, we may *assume* a substantial threat of future enforcement absent compelling contrary evidence.") (internal quotation omitted).

Third, Appellee Garza again confirmed his willingness to enforce the Pre-*Roe* Statutes in 2024, after Texas Local Government Code § 87.011(3)(B) went into

- 11 -

effect. Section § 87.011(3)(B) defines a prosecutor's policy against prosecuting a class of crime as "official misconduct," and subjects any such prosecutor to removal from office. A petition for removal under § 87.011(3)(B) was filed against Appellee Garza in Case No. D-1-GN-24-002191, *The State of Texas Ex. Rel. Mary Dupuis v. José Garza, in his Official Capacity as District Attorney of the 53rd Judicial District* in the 455th Judicial District Court of Travis County, Texas, which asserted that Appellee Garza had a policy of not prosecuting several classes criminal laws, including Texas's abortion statutes.[7] The prosecutor appointed to look into the petition for removal filed a motion to dismiss, in which he stated that certain policies of Appellee Garza regarding non-prosecution of abortion and drug laws were modified in August of 2023, immediately before 87.011(3)(B) became effective. *See* ROA.17256-17266, p. 2 (June 7, 2024 Motion to Dismiss).

The motion to dismiss included and referenced a letter by Michael J. Satin, Appellee Garza's attorney in the removal lawsuit, which stated the allegation that Appellee Garza has a policy against enforcing drug and abortion laws was false because his office's policies require that prosecutors accept "any case for which there is probable cause." *See* ROA.17261-17264. Appellee Garza, therefore, affirmatively indicated his willingness to enforce the Pre-*Roe* Statutes (and other laws) in 2024.

---

[7] The Court may take judicial notice of court records for the purposes of establishing the litigation and its parameters. *Giles v. City of Dallas*, 539 Fed. Appx. 537, 542 n. 1 (5th Cir. 2013).

- 12 -

Fourth, several Appellees made public statements that confirm their willingness to enforce the Pre-*Roe* Statutes. Appellee Sinclair, for example, posted an article regarding the *Dobbs* decision to social media, calling it "good news" (ROA.16426), while other state officials were simultaneously claiming that *Dobbs* made the Pre-*Roe* Statutes immediately enforceable again. Similarly, media reports indicated Appellee Glaser said he would enforce Texas's abortion laws post-*Dobbs*, and that "he feels he cannot pick and choose what he does or does not prosecute[.]"[8]

These facts, whether alone or in combination, demonstrate a scintilla of affirmative action plausibly demonstrating a willingness to enforce the laws that *Dobbs* purportedly revived. *See Book People*, 91 F.4th at 335. As Justice Higginbotham noted in concurrence to this Court's decision in 2023: "The point is that on the record at hand a trier of fact could find there is sufficient evidence of an unsettling and chilling want of clarity in statements by officials with enforcement authority made against a chorus of state officials without enforcement power to allow this case to proceed." *In re Paxton*, 60 F.4th at 262.

---

[8] *See* ROA.5175, n. 43 (citing Lauren Rangel, *Some Texoma District Attorneys Say They Will Prosecute Abortion Cases*, KXII (kxii.com) (June 30, 2022, 6:24 PM), https://www.kxii.com/2022/06/30/some-texoma-district-attorneys-say-they-will-prosecute-abortion-cases/.

### B. The Pre-*Roe* Statutes were enforced by Texas district attorneys and county attorneys until *Roe v. Wade* was decided.

The Pre-*Roe* Statutes were regularly enforced before *Roe v. Wade* directly prohibited their enforcement, as confirmed by more than 30 appellate cases addressing criminal cases based upon them.[9] This number does not include cases for

---

[9] *See, e.g.*, *Wandell v. State*, 25 S.W. 27 (Tex. Crim. App. 1894) (prosecution under Pre-*Roe* Statutes dismissed due to improper indictment pleading); *Willingham v. State*, 33 Tex. Crim. 98, 99, 25 S.W. 424 (1894) (affirming conviction under Pre-*Roe* Statutes); *Cave v. State*, 33 Tex. Crim. 335, 26 S.W. 503 (1894) (affirming conviction under Pre-*Roe* Statutes); *King v. State*, 35 Tex. Crim. 472, 34 S.W. 282 (1896) (reversing conviction under Pre-*Roe* Statutes due to judicial error denying pre-trial motion related to order of trial between participants in same criminal transaction); *Moore v. State*, 37 Tex. Crim. 552, 40 S.W. 287 (1897) (affirming conviction under Pre-*Roe* Statutes); *Reum v. State*, 49 Tex. Crim. 125, 90 S.W. 1109 (1905) (affirming conviction under Pre-*Roe* Statutes); *Jackson v. State*, 55 Tex. Crim. 79, 115 S.W. 262 (1908) (reversing conviction under Pre-*Roe* Statutes due to jury instruction error); *Link v. State*, 73 Tex. Crim. 82, 164 S.W. 987 (1914) (affirming conviction under Pre-*Roe* Statutes); *Shaw v. State*, 73 Tex. Crim. 337, 165 S.W. 930 (1914) (affirming conviction under Pre-*Roe* Statutes); *Fondren v. State*, 74 Tex. Crim. 552, 169 S.W. 411 (1914) (affirming conviction under Pre-*Roe* Statutes); *Gray v. State*, 77 Tex. Crim. 221, 178 S.W. 337 (1915) (reversing conviction under Pre-*Roe* Statutes due to admission of improper character evidence during trial); *Hunter v. State*, 81 Tex. Crim. 471, 196 S.W. 820 (1917) (affirming conviction under Pre-*Roe* Statutes); *Earnest v. State*, 83 Tex. Crim. 257, 202 S.W. 739 (1918) (reversing conviction under Pre-*Roe* Statutes due to admission of improper evidence at trial); *Tonnahill v. State*, 84 Tex. Crim. 517, 208 S.W. 516 (1919) (reversing conviction under Pre-*Roe* Statutes due to error in jury instructions); *Hammett v. State*, 84 Tex. Crim. 635, 209 S.W. 661 (1919) (affirming conviction under Pre-*Roe* Statutes); *Earnest v. State*, 87 Tex. Crim. 651, 224 S.W. 777 (1919) (affirming conviction under Pre-*Roe* Statutes); *Crossett v. State*, 90 Tex. Crim. 440, 235 S.W. 599 (1921) (reversing conviction under Pre-*Roe* Statutes due to venue error); *Crissman v. State*, 93 Tex. Crim. 15, 245 S.W. 438 (1922) (reversing conviction under Pre-*Roe* Statutes because woman who consented to abortion and who was charged became an accomplice by the act of charging, and therefore was subject to witness credibility rules for accomplices); *Ex parte Vick*, 106 Tex. Crim.

which there was no appeal. Prior to the initiation of this lawsuit, the only period during which there is no history of enforcement of the Pre-*Roe* Statutes is the 59-year period when *Roe v. Wade* prohibited their enforcement.

### C.    A presumption of enforcement attaches to the Pre-*Roe* Statutes because they are non-moribund laws.

One day after *Dobbs* was issued, Texas Attorney General Ken Paxton published an "Updated Advisory on Texas Law Upon Reversal of *Roe v. Wade*" that states:

> "[L]ocal prosecutors may choose to immediately pursue criminal prosecutions based on violations of Texas abortion prohibitions predating *Roe* that were never repealed by the Texas Legislature. Although these statutes were unenforceable while *Roe* was on the

---

373, 292 S.W. 889 (1927) (ordering trial court to grant bail in abortion case); *Limicy v. State*, 148 Tex. Crim. 130, 185 S.W.2d 571 (1945) (reversing conviction under Pre-*Roe* Statutes because assault did not cause abortion "designedly"); *Jarquin v. State*, 155 Tex. Crim. 140, 232 S.W.2d 736 (1950) (affirming conviction under Pre-*Roe* Statutes); *Welch v. State*, 159 Tex. Crim. 352, 264 S.W.2d 100 (1953) (affirming conviction under Pre-*Roe* Statutes); *Mayberry v. State*, 160 Tex. Crim. 432, 271 S.W.2d 635 (1954) (affirming conviction under Pre-*Roe* Statutes); *Cortez v. State*, 161 Tex. Crim. 77, 275 S.W.2d 123 (1954) (affirming conviction under Pre-*Roe* Statutes); *Owens v. State*, 162 Tex. Crim. 212, 283 S.W.2d 749 (1955) (affirming conviction under Pre-*Roe* Statutes); *Davis v. State*, 168 Tex. Crim. 399, 328 S.W.2d 315 (1959) (reversing conviction under the Pre-*Roe* Statutes because of jury misconduct); *Veevers v. State*, 354 S.W.2d 161, 171 (Tex. Crim. App. 1962) (affirming defendant physician's conviction Pre-*Roe* Statutes for the use of means designed to produce an abortion.); *Thompson v. State*, 493 S.W.2d 913 (Tex. Crim. App. 1971), *vacated*, 410 U.S. 950 (1973) (affirming defendant physician's conviction for abortion under the Pre-*Roe* Statutes and stating that the person who drove the pregnant person to the defendant's office "could be a principal in the State's case . . . and [was], therefore, an accomplice witness as a matter of law.") The *Thompson* case was overturned following the U.S. Supreme Court's decision in *Roe*, but remains an example of historical enforcement.

books, they are still Texas law. Now that *Roe* has been overturned, those statutes are in full effect.

ROA.2115-2117.

That same day, General Paxton issued a press release celebrating the *Dobbs* decision that included a link to his Advisory and stated "[A]bortion is illegal here. I look forward to defending the pro-life laws of Texas and the lives of all unborn children moving forward."[10] Also on that same day, in an interview with Leland Vittert, General Paxton stated that Texas's criminal abortion laws reach organizations that offer abortion travel assistance for employees.[11]

On June 28, 2022, General Paxton confirmed the statements in his June 24 Advisory via tweet: "[b]ut w/ SCOTUS's Dobbs decision, these laws are 100% in effect & constitutional."[12] On June 30, 2022, General Paxton issued a press release regarding an emergency motion he filed with the Texas Supreme Court asserting that the Pre-*Roe* Statutes were fully enforceable.[13] On July 1, 2022, General Paxton tweeted, "Texas's pre-*Roe* statutes criminalizing abortion is [sic] 100% good law, and I'll ensure they're enforceable."[14]

---

[10] ROA.2118-2122.
[11] NewsNation, "Some Red State Prosecutors Won't Enforce Ban", On Balance with Leland Vittert, (June 24, 2022), *available at* https://www.youtube.com/watch?v=HcauVyRw4tQ (last visited Jan. 23, 2026).
[12] ROA.2124.
[13] ROA.2126-2128.
[14] ROA.2136; *see also* Petition for Writ of Mandamus, *In re Ken Paxton*, No. 22-0527, (TX. June 29, 2022), found at ROA.2138-2211; Reply in Support of Petition

General Paxton's claims that the Pre-*Roe* Statutes were enforceable again, combined with the history of enforcement before *Roe*, make the Pre-*Roe* Statutes a "recently enacted (or at least non-moribund)" law. A presumption of their enforcement therefore attaches. *See Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), *as revised* (Oct. 30, 2020). As this Court recently held, the presumption of enforcement, coupled with a statutory duty to enforce, and in the absence of contrary evidence, satisfies the scintilla of enforcement to satisfy the *Ex parte Young* standard. *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 400 (5th Cir. 2025) (finding scintilla of enforcement where the Insurance Commission—which had statutory enforcement duty—did not agree to an injunction against enforcement during appeal, and did not indicate it would stop enforcement triggered by an earlier enforcement letter).

## III. The District Court Erred When it Held That *Mi Familia Vota v. Ogg* Precludes Appellants' Claims.

The District Court based its ruling entirely on this Court's decision in *Ogg*, but that case does not compel the outcome reached below. In 2022, Kim Ogg, the Harris County, Texas District Attorney, was sued in her official capacity because she was the official tasked with enforcing an election law the plaintiffs alleged to be unconstitutional. *Ogg*, 105 F.4th at 313. The challenged statute had never been

---

for Writ of Mandamus, *In re Paxton*, No. 22-0527, (TX. July 11, 2022), found at ROA.2213-2228.

enforced before, there were no allegations regarding claims by state officials that the statute would be or could be enforced, DA Ogg had taken no action whatsoever, DA Ogg stipulated she would not enforce the law during litigation, and DA Ogg had complete discretion as to whether to enforce the challenged statute. *See id.* at 325-332.

In *Ogg,* this Court set out three factors for consideration when determining whether a particular defendant's connection with the enforcement of a challenged law is sufficient under *Ex parte Young*: (1) the duty of the defendant to enforce the law; (2) the demonstrated willingness of the defendant to enforce that law; and (3) whether the conduct of the defendant with respect to the challenged law has compelled or constrained the complaining party. *See id*. The District Court in this matter interpreted *Ogg's* holding as *solely* predicated on the finding that DA Ogg had not attempted or threatened enforcement and treated the lack of any explicit threat of enforcement against Appellants by Appellees in this case as dispositive. The District Court's failure to consider other, distinguishing facts when analyzing prongs (2) and (3) was error.

**A.    This Court's immunity decisions make clear that *Mi Familia Vota v. Ogg* is limited to the facts at issue in that case.**

This Court's precedents, both before and after *Ogg*, confirm that pointed silence regarding enforcement of a threatening law, coupled with a legal duty to enforce that law, is generally sufficient to satisfy the *Ex parte Young* exception. *See*

*Book People*, 91 F. 4th at 335; *Tex. Democratic Party*, 978 F.3d at 179-80; *Air Evac EMS*, 851 F.3d at 519.

This Court's recent decision in *Healthy Vision* confirms the settled rule. *See Healthy Vision*, 138 F.4th at 400. In that case, this Court found that the Insurance Commissioner, charged with the enforcement of a managed care statute, was a proper *Ex parte Young* defendant even before considering whether the Commissioner had actually threatened enforcement. *Id.*

While *Healthy Vision* also involved an enforcement letter, this Court was clear that the "scintilla of enforcement" requirement was already met without it—the letter simply served as an independent basis for *Ex parte Young* eligibility:

> *These actions* [failure to agree not to enforce, failure to introduce evidence the Commissioner will not enforce] link the Commissioner to the reasonably anticipated enforcement that the plaintiffs have asked the district court to restrain. It is reasonable not only to anticipate that the legislation will be enforced in general, but that it will be enforced by the Commissioner in particular. That makes the Commissioner a proper *Ex parte Young* defendant.
>
> *Moreover*, the plaintiffs argue that "an enforcement letter" was "directed by the Commissioners Department of Insurance to VSP[…]."

*Id.* (emphasis added). It is clear that this Court did not believe the enforcement letter was necessary in *Healthy Vision*, though it created an independent basis for *Ex parte Young* to apply. *See id.* Likewise, no such overt act is necessary in this case.

- 19 -

The Court in *Healthy Vision* also distinguished *Ogg* based on the unique facts present in *Ogg*: "In [*Ogg*], the plaintiffs brought suit against the Harris County District Attorney based *only* on her generic duty to bring prosecutions on the State's behalf—despite the fact that she had complete discretion to prosecute violations of the challenged provisions, and even stipulated that she would not do so during the pendency of the challenge." *Healthy Vision*, 138 F.4th at 400 (emphasis added). That is not the case here.

Appellees were sued because they are the only state officials who can enforce the Pre-*Roe* Statutes in their respective jurisdiction, and as explained in Section III.C. *infra*, they do not have discretion to refuse to enforce the Pre-*Roe* Statutes. Moreover, every single Appellee refused (at least once) to disavow their intention to enforce the Pre-*Roe* Statutes against Appellees. And although some Appellees previously stipulated they would not enforce the Pre-*Roe* Statutes during this litigation, those stipulations are no longer in force,[15] and those Appellees' later actions, including specifically refusing to disavow enforcement, must also be considered, particularly because under Section 87.011(3)(B) of the Local

---

[15] The stipulations were also (1) executed based on the Appellees' assumption that the Texas Attorney General would defend the constitutionality of the challenged statutes, (2) conceded that the Appellees were proper defendants, and (3) relieved the Appellees from any duty to answer or participate in the litigation, among other provisions that have failed or been repudiated in the years this matter has been in litigation. *See* ROA.846-851.

Government Code they can no longer exercise any discretion to disavow enforcement of the Pre-*Roe* Statutes.

This Court's decision in *Institute for Free Speech v. Johnson* also confirms the District Court's misplaced reliance on *Ogg*. 148 F.4th 318 (5th Cir. 2025). In *Johnson*, the Court found that members of the Texas Ethics Commission were proper *Ex parte Young* defendants, largely due to a separate, non-challenged statute that stated "the Commissioners 'shall administer and enforce'" the Texas Election Code, which included the challenged statute. *Johnson*, 148 F.4th at 333 (citing TEX. GOV'T CODE ANN. § 571.061(a)(3)). As in *Johnson*, Article 2A.102(a) of the Texas Code of Criminal Procedure provides that "[e]ach district attorney *shall* represent the state in all criminal cases…." TEX. CODE CRIM. PRO. ANN. ART. 2A.102(a) (emphasis added). And following the enactment of Section 87.011(3)(B) of the Local Government Code, the Appellees have no discretion to refuse to enforce the Pre-*Roe* Statutes—indeed, DA Garza has, as previously noted, already directed his prosecutors to take any case for which there is probable cause.

In *Johnson*, the Court found there was a sufficient threat of enforcement when the Commissioners failed to provide assurances against enforcement. *Johnson*, 148 F.4th at 333. Here, too, Appellees have failed to provide assurances that they will not enforce the Pre-*Roe* Statutes, even when a direct question was posed to them.

- 21 -

This Court's decision in *Umphress v. Hall* further shows either that the District Court misapplied *Ogg*, or that *Ogg* does not govern this matter, albeit in a case where the key question was Article III standing. In that case, a state court judge, Umphress, sued the State Commission on Judicial Conduct seeking (among other things) an injunction protecting him from enforcement of certain judicial ethical canons against his decision to marry heterosexual couples but not same-sex couples. *Umphress v. Hall*, 133 F.4th 455, 461 (5th Cir. 2025). The Court noted there had been one relevant enforcement against similar conduct, but no enforcement or threat against Umphress himself. *Id.* at 466. The Court nevertheless found a sufficient threat of enforcement, especially due to the "Commission's striking refusal to disavow future enforcement against Umphress."

It is precisely that silence—a refusal to disavow future enforcement—that is the source of Appellees' injuries in this case and also the scintilla of enforcement required under *Ex parte Young*.

### B.    Appellees' silence in response to direct questions demonstrates a willingness to enforce the challenged laws.

Even if *Ogg* was controlling (and it is not), the facts in this case are distinguishable. In *Ogg*, the official with enforcement responsibility made an express stipulation not to enforce the challenged legislation during the course of the litigation, and there were no other facts in the record. *Ogg*, 105 F.4th at 318. Here, Appellees have engaged in specific conduct that constrains Appellants'

behavior; namely, in the midst of a storm of repeated claims by various state officials that the Pre-*Roe* Statutes *can* be enforced, and that they can be enforced in contexts specific to Appellants' desired and constitutionally protected conduct, Appellees have remained notably silent and *refused* to make the express disavowal of enforcement DA Ogg made.

Appellees Palacios, Ramirez, Stanek, Gonzales, Hicks, and White refused to respond to letters sent by counsel for certain Appellants in March 2023, which asked those Appellees to "confirm in writing that your office does not intend to investigate or prosecute the provision of funding and practical support by [Plaintiff] to pregnant Texans who reside in [County]." ROA.17270-17284. Counsel for Appellants also emailed every Appellee in this case asking the same questions in September 2023; all refused to answer, claiming that the request was improper discovery. ROA.17285-17323. Thus, unlike in *Ogg*, Appellees have refused to provide any disavowal of future enforcement to Appellants despite being confronted directly with the question, not once but twice.

As discussed in Section II.C., and Appellants' Statement of the Case, both *supra*, Appellees' willful silence exists amongst numerous threats and statements regarding enforcement of the Pre-*Roe* Statutes by other Texas public officials, including multiple statements by General Paxton that the Pre-*Roe* Statutes are effective and enforceable, and letters and tweets by Texas legislators threatening

criminal and civil penalties for Appellants' desired conduct.[16] Even if silence and enforcement power alone were not a sufficient "affirmative step" toward enforcement, Appellees have said nothing, while much of the rest of state government threatens enforcement, and have instead maintained their silence in the face of direct questions. ROA.17270-17284 and ROA.17285-17323.

On these facts, Appellants' silence is sufficiently chilling to demonstrate their willingness to enforce the Pre-*Roe* Statutes. As Justice Higginbotham noted in 2023, Appellants in this case alleged (and would later prove, at a preliminary injunction hearing) the existence of "a chorus of state officials" whose threatening statements serve as the backdrop for an "unsettling and chilling want of clarity in statements by officials with enforcement authority." *In re Paxton*, 60 F.4th at 262 (Higginbotham, J., concurring). Although Judge Higginbotham was writing about General Paxton in his concurring opinion, the "chorus" he referred to is exactly the one at issue here, and the "want of clarity" from Appellees is no less chilling.

### C. Appellees have a duty to enforce the challenged provision and the discretion discussed in *Mi Familia Vota v. Ogg* no longer exists.

The *Ogg* Court based its decision, in part, on the fact that there was "no statute that commands [DA] Ogg to prosecute Texas Election Code violations" and that DA

---

[16] *See* ROA.163-165, 168-174; ROA.328-336; ROA.2118-2122, 2124, 2126-2128, 2136.

- 24 -

Ogg retained "complete discretion" over her enforcement decisions. *Ogg*, 105 F.4th at 326. That unfettered discretion does not exist in this case.

Texas Local Government Code § 87.011(3)(B) went into effect on September 1, 2023,[17] and prohibits, and characterizes as "official misconduct," any "adoption or enforcement of a policy of refusing to prosecute a class or type of criminal offense." TEX. LOC. GOV'T CODE ANN. § 87.011(3)(B). A petition for removal may be filed by any person who resides in the county "in which the alleged cause of removal occurred" and who is not currently charged with a crime. *Id.* at § 87.015 (b-1). Thus, since September 1, 2023, no Appellee in this case has "complete discretion" to make a decision not to enforce the Pre-*Roe* Statutes. As discussed above, this law already forced DA Garza to publicly repudiate a claim that he would not enforce abortion laws like the Pre-*Roe* Statutes. Appellees' duty to enforce the Pre-*Roe* Statutes is mandatory, not discretionary, and the "duty" prong of the *Ogg* analysis is met. *Id.*[18]

---

[17] Although *Ogg* was decided after September 1, 2023, all of the briefing in the district court was filed well before that, and the effect of this law was not raised or considered either in the district court or on appeal. *See La Union del Pueblo Entero v. Abbott*, 618 F. Supp.3d 435 (W.D. Tex. 2022), *rev'd in part, vacated in part sub nom.*; *Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024) (the district court decision on appeal, dated August 2, 2022).

[18] As discussed in Section IV, *infra*, Appellants assert that the "specific duty" requirement in Fifth Circuit case law, and under *Whole Woman's Health* and *Ex parte Young* itself, is satisfied when the official named has the power to enforce the challenged law, without more.

**D.    The District Court's Application of *Mi Familia Vota v. Ogg* eliminates pre-enforcement challenges that are guaranteed by *Ex parte Young* and its progeny.**

If the District Court's reading and application of *Ogg* is correct, no person subject to an unconstitutional criminal law would be able to obtain relief without risking ruinous harm by violating the law. The U.S. Supreme Court's long history and tradition of affording pre-enforcement review under *Ex parte Young* would be meaningless, and the sovereign immunity exception that permitted the U.S Supreme Court to decide *Roe* and *Dobbs* would not exist. States could effectively hold their citizens in limbo, paralyzed by unconstitutional laws, so long as the threats of enforcement were only made by state officials other than district attorneys, while district attorneys remained silent.

Long-settled jurisprudence does not permit states to hold their citizens hostage in this way. As this Court stated last year:

> This guidepost must not be understood so rigidly as to thwart its orienting purpose. Because *Ex parte Young* concerns prospective relief, the enforcement action targeted by such relief ordinarily is ongoing or takes place in the future. *See, e.g., NiGen*, 804 F.3d at 395 (noting "threatening letters" from the Texas Attorney General). At the same time, an inference of future enforcement may be made from historical data. *See, e.g., Air Evac EMS*, 851 F.3d at 519 (citing "state defendants' pervasive enforcement"). While the term "demonstrated" points toward the past, and "willingness" points toward the future, we have not imposed upon plaintiffs the insuperable obstacle of proving the future as if it has already been observed; we have merely asked them for an

- 26 -

> evidence-based forecast. *See Mi Familia Vota*, 105 F.4th
> at 329. Of necessity in such a situation, circumstantial
> evidence will do. A plaintiff thus has only to provide
> "some scintilla" of an indication that a defendant official
> is willing to enforce the challenged statute in order that
> such ultra vires action may be reasonably anticipated and
> restrained. *Id.* (quoting *Tex. Democratic Party I*, 961 F.3d
> at 401).

*Healthy Vision*, 138 F.4th at 398.[19]

If the power of a district attorney to enforce the criminal laws is not sufficiently specific to satisfy *Ex parte Young*, and all that is required to avoid triggering *Ex parte Young* is for district attorneys to remain silent (regardless of what other state officials without enforcement power are saying or threatening), then states will be able to deprive Americans of their constitutional rights through any law prohibiting speech or other critical rights paired with a penalty too dreadful to risk. The U.S. Supreme Court carved out the exception in *Ex parte Young* precisely because a law can chill legal and protected conduct by operating *in terrorem*, thereby stultifying rights forever if no pre-enforcement challenge is permitted:

> The [plaintiffs] could not be expected to disobey any of
> the provisions of the acts or orders at the risk of such fines
> and penalties being imposed upon them, in case the court
> should decide that the law was valid. The result would be
> a denial of any hearing to the company.

---

[19] The Court also explained that the standing and sovereign immunity analyses overlap, and in a First Amendment case, failure to repudiate an intent to enforce the law leads to reasonable anticipation of enforcement of the law; this presumption from the standing analysis bolstered the Court's conclusions regarding immunity. *Id.* at 399-400.

- 27 -

*Ex parte Young*, 209 U.S. at 146. Here, a sufficiently terrible penalty (felony liability) is chilling Appellants' exercise of constitutional rights. Under *Ex parte Young* and its progeny, pre-enforcement review must be allowed, or these rights will be permanently locked behind an inadequate post-enforcement remedy no person could be expected to risk.

**IV.**   **To the Extent *Mi Familia Vota v. Ogg* Bars Appellants' Claims, it is Wrongly Decided, Conflicts with U.S. Supreme Court Precedent and this Court's Precedent, and Should Be Overruled.**

The U.S. Supreme Court has long held that, "because an unconstitutional legislative enactment is 'void,' a state official who enforces that law 'comes into conflict with the superior authority of [the] Constitution,' and therefore is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'" *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (quoting *Ex parte Young*, 209 U.S. at 159-60). Likewise, in *Verizon Md. Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002), the Court held that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.,* at 645, (quoting *Idaho v.*

*Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O'Connor, J., concurring in part and concurring in judgment)).

Appellants' claims seek prospective declaratory and related injunctive relief and assert that Art. 4512.2 is facially unconstitutional for many reasons, including that it impermissibly infringes on Appellants' First Amendment Rights. This Court has repeatedly held that such claims fall within the *Ex parte Young* exception to sovereign immunity. *See, e.g.*, *La Union del Pueblo Entero v. Nelson*, No. 22-50775, 2025 WL 3771384, at *10-12 (5th Cir. Dec. 31, 2025) (Secretary of State's power to enforce the relevant statute and predecessor's indication that forensic voting audit would be conducted was sufficient to render Secretary a proper *Ex parte Young* defendant in challenge based on First, Fourteenth, and Fifteenth Amendment rights without any affirmative enforcement action); *Woodlands Pride, Inc. v. Paxton*, 157 F.4th 775, 786 n. 8 (5th Cir. 2025) (in first amendment case, attorney general's power to civilly enforce relevant law satisfied *Ex parte Young*); *Book People*, 91 F. 4th at 335 (TEA commissioner a proper *Ex parte Young* defendant where he had taken no actions yet but might undertake enforcement action *going forward* that would compel the plaintiff booksellers to submit ratings with which they disagreed); *Tex. Democratic Party*, 978 F.3d at 179-80 (Secretary of State's power to create and issue absentee forms sufficient connection to satisfy *Ex parte Young*).

- 29 -

Importantly, in *Whole Women's Health v. Jackson,* when confronted with another of Texas's abortion prohibitions, the U.S. Supreme Court found that sovereign immunity *did not bar* the petitioner's suit against officials who "may or must take enforcement actions against the petitioners if they violate [the law at issue there, SB8]." 595 U.S. 30, 45-46 (2021). The Appellees in this case "may or must" enforce the challenged law. Eight justices[20] found that *Ex parte Young*'s requirements were met where the sued officials possessed *at least* a discretionary power to enforce a portion of the relevant statute—four in the plurality opinion, and four in a concurrence and dissent in part.

Chief Justice Roberts explained: "As eight Members of the Court agree… petitioners may bring a pre-enforcement suit challenging the Texas law in federal court under *Ex parte Young*…because there exist state executive officials who retain authority to enforce it." *Whole Woman's Health*, 595 U.S. at 59–60 (Roberts, C.J., concurring and dissenting, joined by Breyer, J., Sotomayor, J., and Kagan, J.). In *Whole Woman's Health,* no enforcement action was threatened or taken by the licensing officials named. Thus, under binding U.S. Supreme Court precedent, actual enforcement power is enough, without more, to satisfy *Ex parte Young*.

---

[20] Appellants respectfully disagree with the *Ogg* Court's statement that this proposition was joined only by a plurality of the Court. *Ogg*, 105 F.4th at 327.

Similarly, this Court has noted that the enforcement authority related to the law in question need not even be directed at the plaintiffs in order for the *Ex parte Young* exception to apply. *Book People*, 91 F. 4th at 335. In *Book People*, the Commissioner of the Texas Education Agency was held to be a proper defendant not entitled to sovereign immunity even where he had taken no actions yet in conjunction with the law in question. The Court noted that the acts the Commissioner may undertake *going forward* compelled the plaintiff booksellers to submit ratings with which they disagreed and constrained them from continuing to do business with school districts if they did not comply. *Id*.

This Court's recent decisions in *Healthy Vision* and *Johnson* also serve to confirm this settled legal principle. *See Healthy Vision*, 138 F.4th at 398-400 (finding Insurance Commissioner proper *Ex parte Young* defendant independently of finding of threat of enforcement); *Johnson*, 148 F.4th at 333 (finding Commissioners proper *Ex parte Young* defendants where they had statutory duties and failed to disavow enforcement).

Here, Appellants are similarly compelled to adhere to a law with which they disagree—for similar First Amendment reasons—and constrained from their normal business activities in helping people obtain legal reproductive healthcare. The Appellees do not have sovereign immunity under *Ex parte Young*, and if *Ogg* compels the opposite conclusion, it should be overruled.

- 31 -

## CONCLUSION

Appellants respectfully request the Court hold that *Ex parte Young* allows their claims to move forward and that Appellants satisfied the requirements of *Ex parte Young*, reverse the District Court's judgment, and remand for further proceedings consistent with the Court's opinion.

Dated: January 26, 2026

Respectfully submitted.

THOMPSON COBURN LLP

/s/ *Elizabeth G. Myers*
Elizabeth G. Myers #24047767 TX
John P. Atkins #24097326 TX
Allyn Jaqua Lowell #24064143 TX
2100 Ross Avenue, Suite 600
Dallas, Texas 75201
emyers@thompsoncoburn.com
jatkins@thompsoncoburn.com
alowell@thompsoncoburn.com

*Attorneys for Plaintiff-Appellants*

## Certificate of Service

I hereby certify that, on January 26, 2026, an electronic copy of the foregoing was filed with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit, using the appellate CM/ECF system. I further certify that all parties in the case are represented by counsel, who are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Elizabeth G. Myers*
Elizabeth G. Myers

## <u>CERTIFICATE OF COMPLIANCE</u>

With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

I hereby certify that this document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this document contains 7,244 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

I hereby further certify that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in the Times New Roman font, 14-point typeface.

*/s/ John P. Atkins*
John P. Atkins