**No. 25-50563**

# In the United States Court of Appeals for the Fifth Circuit

———

Fund Texas Choice; North Texas Equal Access Fund; Lilith Fund for Reproductive Equity; Frontera Fund; Jane's Due Process; Clinic Access Support Network; Ghazaleh Moayedi; Buckle Bunnies Fund,

*Plaintiffs-Appellants*,

*v.*

Richard E. Glaser; Susan R. Deski; Julie Renken; Wiley B. McAfee; Jose Garza; Fred H. Weber; Joe Gonzales; Toribio Palacios; K. Sunshine Stanek; Gocha Allen Ramirez; Ori T. White; Ryan Sinclair; Jacob Putman; James Montoya,

*Defendants-Appellees.*

———

On Appeal from the United States District Court for the Western District of Texas, Austin Division No. 1:22-cv-859

———

## BRIEF OF APPELLEES JACOB PUTMAN AND K. SUNSHINE STANEK

———

Heather Gebelin Hacker
HACKER STEPHENS LLP
108 Wild Basin Road South
Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
heather@hackerstephens.com

*Counsel for Defendants-Appellees Jacob Putman and K. Sunshine Stanek*

## CERTIFICATE OF INTERESTED PERSONS

No. 25-50563

FUND TEXAS CHOICE, ET AL.,

*Plaintiffs-Appellants*,

*v.*

RICHARD E. GLASER, ET AL.,

*Defendants-Appellees.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs-Appellants | Former or present counsel |
| --- | --- |
| • Fund Texas Choice<br>• North Texas Equal Access Fund<br>• Lilith Fund for Reproductive Equity<br>• Frontera Fund<br>• Jane's Due Process<br>• Clinic Access Support Network<br>• Ghazaleh Moayedi<br>• Buckle Bunnies Fund | Thompson Coburn LLP<br>• Elizabeth G. Myers<br>• Allyn Jaqua Lowell<br>• John P. Atkins<br>• Jennifer R. Ecklund<br>• Sarah Hillier<br>• Elizabeth B. Rocha<br>• Nicole L. Williams<br><br>Alexander Dubose & Jefferson LLP<br>• Alexandra Wilson Albright<br>• Kevin H. Dubose<br>• Kirsten B. Castaneda<br>• Marcy Hogan Greer |

| Defendants-Appellees | Former or present counsel |
|---|---|
| • Jacob Putman | Hacker Stephens LLP<br>• Heather Gebelin Hacker<br>• Andrew B. Stephens |
| • K. Sunshine Stanek | Hacker Stephens LLP<br>• Heather Gebelin Hacker<br><br>Lubbock County District Attorney's Office – Civil Division<br>• Jennifer K. Irlbeck<br>• Richard N. Burt |
| • Susan R. Deski<br>• Julie Renken/Derek Estep<br>• Wiley B. McAfee/Perry Thomas<br>• Fred H. Weber<br>• Richard E. Glaser/John Skotnik<br>• Ryan Sinclair | Allison, Bass & Magee, LLP<br>• Jason Eric Magee |
| • Jose Garza | Travis County Attorney's Office<br>• Jose Garza<br>• Elaine A. Casas<br>• Amy Stoeckl Ybarra<br>• Anthony J. Nelson<br>• Leslie W. Dippel<br>• Patrick T. Pope<br>• Cynthia W. Veidt<br>• Sameer Singh Birring |
| • Joe Gonzales | Bexar County District Attorney's Office, Civil Division<br>• Lisa V. Cubriel<br>• Robert William Piatt, III |

| | |
|---|---|
| • Toribio Palacios | Hidalgo County District Attorney's Office<br>• Victor M. Garza<br>• Josephine L. Ramirez<br>• Leigh Ann Tognetti |
| • Gocha Allen Ramirez | Contreras, Gutierrez and Associates<br>• Cynthia Contreras Gutierrez |
| • Bill D. Hicks/James Montoya | El Paso County Attorney's Office<br>• Bill D. Hicks<br>• Francisco J. Ortega<br>• John E. Untereker |

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER
*Counsel for Defendants-Appellees Jacob*
*Putman and K. Sunshine Stanek*

iii

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is warranted because this case presents important jurisdictional issues—standing and sovereign immunity—in a suit against multiple government officials.

# Table of Contents

Page(s)

_Toc228220531Certificate of Interested Persons......................................................i

Statement Regarding Oral Argument ...............................................................iv

Table of Authorities .......................................................................................vii

Introduction....................................................................................................1

Statement of Issues .........................................................................................4

Statement of the Case ......................................................................................5

    I.   Factual background.................................................................................5

        A.  Jacob Putman and Sunshine Stanek's state-law roles as
            Criminal  District Attorney .................................................................6

        B.  Plaintiff-Appellants ...........................................................................8

        C.  Original defendants and initial lawsuit................................................8

        D.  Plaintiffs amend and expand their lawsuit ........................................ 11

    II.  Procedural history ............................................................................... 12

        A.  Motions to dismiss ......................................................................... 12

        B.  Class certification briefing and discovery ......................................... 15

        C.  Summary judgment......................................................................... 16

        D.  The district court's summary judgment ruling.................................. 17

Summary of the Argument.............................................................................. 19

Standard of Review .........................................................................................20

Argument........................................................................................................ 21

    I.   Sovereign Immunity Bars Plaintiffs' Claims Against DA Putman
       and DA Stanek.................................................................................... 21

        A.  DA Putman and DA Stanek have no "specific duty" to bring
            prosecutions under the pre-*Roe* laws. ...............................................22

        B.  DA Putman and DA Stanek have no "demonstrated
            willingness" to enforce the pre-Roe laws. ........................................24

        C.  Neither DA Putman nor DA Stanek has "compelled" or
            "constrained" the Plaintiffs. ........................................................... 35

    II.  Plaintiffs Lack Standing to Sue DA Putman and DA Stanek. ...................36

A.  Plaintiffs lack an injury in fact as to DA Putman and DA Stanek. ...................................................................... 37

B.  Plaintiffs failed to prove any injury "fairly traceable" to DA Putman or DA Stanek. .......................................... 47

C.  Plaintiffs' claimed harm is not redressable. ....................... 48

Conclusion.................................................................................. 49

Certificate of Service.................................................................. 50

Certificate of Compliance .......................................................... 50

vi

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.,*
  851 F.3d 507 (5th Cir. 2017) ..................................................................36

*Barilla v. City of Houston,*
  13 F.4th 427 (5th Cir. 2021) ...................................................................38

*Brennan v. Stewart,*
  834 F.2d 1248 (5th Cir. 1988)................................................................. 48

*Burnett Specialists v. Cowen,*
  140 F.4th 686 (5th Cir. 2025).........................................................2, 39, 45, 46

*Calhoun v. Collier,*
  78 F.4th 846 (5th Cir. 2023).....................................................................29

*California v. Texas,*
  593 U.S. 659 (2021)................................................................... 2, 43, 44, 49

*Catalyst Strategic Advisors, L.L.C. v. Three Diamond Capital Sbc, L.L.C.,*
  93 F.4th 870 (5th Cir. 2024)..................................................................... 20

*Cave v. State,*
  26 S.W. 503 (Tex. Crim. App. 1894)........................................................27

*City of Austin v. Paxton,*
  943 F.3d 993, 997 (5th Cir. 2019) ...................................................... 21, 22, 36

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013)..........................................................2, 20, 43, 44, 45, 48

*Cortez v. State,*
  275 S.W.2d 123 (Tex. Crim. App. 1954)...................................................... 28

*Crissman v. State,*
  245 S.W. 438 (Tex. Crim. App. 1922)........................................................27

*Crossett v. State,*
    235 S.W. 599 (Tex. Crim. App. 1921)........................................................27

*Davis v. State,*
    328 S.W.2d 315 (Tex. Crim. App. 1959)...................................................... 28

*Dobbs v. Jackson Women's Health Organization,*
    597 U.S. 215 (2022) ...................................................................... 1, 5, 8

*Earnest v. State,*
    202 S.W. 739 (Tex. Crim. App. 1918) ......................................................27

*Earnest v. State,*
    224 S.W. 777 (Tex. Crim. App. 1919).......................................................27

*Ex parte Vick,*
    292 S.W. 889 (Tex. Crim. App. 1927).......................................................27

*Ex parte Young,*
    209 U.S. 123 (1908) ...........................................................................21

*Fondren v. State,*
    169 S.W. 411 (Tex. Crim. App. 1914) ........................................................ 28

*Fund Tex. Choice v. Paxton,*
    658 F. Supp. 3d 377 (W.D. Tex. 2023) .................................................. 10, 34

*Glass v. Paxton,*
    900 F.3d 233 (5th Cir. 2018) ............................................................ 2, 44, 45

*Gray v. State,*
    178 S.W. 337 (Tex. Crim. App. 1915) .......................................................27

*Hammett v. State,*
    209 S.W. 661 (Tex. Crim. App. 1919) ....................................................... 28

*Holtzclaw v. DSC Commc'ns Corp.,*
    255 F.3d 254 (5th Cir. 2001) .................................................................21

*Hunter v. State,*
    196 S.W. 820 (Tex. Crim. App. 1917)........................................................27

viii

*In re Gee,*

    941 F.3d 153 (5th Cir. 2019) ....................................................................10

*In re Paxton,*

    60 F.4th 252 (5th Cir. 2023) ...................................................................10

*Jackson v. State,*

    115 S.W.262 (Tex. Crim. App. 1908) .........................................................27

*Jarquin v. State,*

    232 S.W.2d 736 (Tex. Crim. App. 1950) ...................................................... 28

*K.P. v. LeBlanc,*

    627 F.3d 115 (5th Cir. 2010) ..................................................................... 24

*King v. State,*

    34 S.W. 282 (Tex. Crim. App. 1896)...........................................................27

*La Union del Pueblo Entero v. Abbott,*

    No. 24-50783, 2026 WL 391215 (5th Cir. Feb. 12, 2026)................................ 20

*Laufer v. Mann Hospitality, LLC,*

    996 F.3d 269 (5th Cir. 2021) ................................................................2, 39

*LIA Network v. City of Kerrville, Tex.,*

    163 F.4th 147 (5th Cir. 2025)....................................................................46

*Limicy v. State,*

    185 S.W.2d 571 (Tex. Crim. App. 1945) ......................................................27

*Link v. State,*

    164 S.W. 987 (Tex Crim. App. 1914)...........................................................27

*Lujan v. Defs. of Wildlife,*

    504 U.S. 555 (1992)...................................................................36, 37, 39, 48

*Massachusetts v. Mellon,*

    262 U.S. 447 (1923) ................................................................................43

*Mayberry v. State,*

    271 S.W.2d 635 (Tex. Crim. App. 1954)...................................................... 28

*McCorvey v. Hill,*

    385 F.3d 846 (5th Cir. 2004) ................................................................. 6

*Meshell v. State,*

    739 S.W.2d 246 (Tex. Crim. App. 1987) ................................................. 23, 35

*Mi Familia Vota v. Ogg,*

    105 F.4th 313 (5th Cir. 2024) ....1, 16, 17, 18, 19, 21, 22, 24, 25, 26, 29, 33, 35, 36

*Moore v. State,*

    40 S.W. 287 (Tex. Crim. App. 1897)........................................14, 25, 27, 31, 47

*NiGen Biotech, LLC v. Paxton,*

    804 F.3d 389 (5th Cir. 2015) ........................................................... 24

*O'Shea v. Littleton,*

    414 U.S. 488 (1974)........................................................................45

*Owens v. State,*

    283 S.W.2d 749 (Tex. Crim. App. 1955) ........................................... 28

*Page v. Cooke Cnty., Tex.,*

    226 F.3d 643 (5th Cir. 2000)........................................................... 40

*Paxton v. Dettelbach,*

    105 F.4th 708 (5th Cir. 2024)........................................................... 2, 39, 40

*Reum v. State,*

    90 S.W. 1109 (Tex. Crim. App. 1905) .............................................27

*Roe v. Wade,*

    410 U.S. 113 (1973).................................................................... 1, 5

*Shaw v. State,*

    165 S.W. 930 (Tex. Crim. App. 1914)........................................................27

*Speech First, Inc. v. Fenves,*

    979 F.3d 319 (5th Cir. 2020)........................................................ 14, 25, 46

*Spokeo, Inc. v. Robins,*

    578 U.S. 330 (2016)....................................................................37

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998)....................................................................... 48

*Stringer v. Whitley,*
942 F.3d 715 (5th Cir. 2019) ..................................................... 48

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009) ..................................................................39

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ..................................................................37

*Tex. Democratic Party v. Abbott,*
961 F.3d 389 (5th Cir. 2020) ..........................................1, 21, 22

*Texas v. United States,*
50 F.4th 498 (5th Cir. 2022) .....................................................37

*Thompson v. State,*
493 S.W.2d 913 (Tex. Crim. App. 1971) ................................... 28

*Tonnahill v. State,*
208 S.W. 516 (Tex. Crim. App. 1919)........................................27

*United States v. Rylander,*
460 U.S. 752 (1983)................................................................... 40

*Veevers v. State,*
354 S.W.2d 161 (Tex. Crim. App. 1962)................................... 28

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*
535 U.S. 635 (2002) ................................................................. 24

*Wandell v. State,*
25 S.W. 27 (Tex. Crim. App. 1897) ...........................................27

*Welch v. State,*
264 S.W.2d 100 (Tex. Crim. App. 1953) ................................... 28

*White Hat v. Murrill,*
141 F.4th 590 (5th Cir. 2025) ...............................................2, 39

xi

*Willingham v. State,*

   25 S.W. 424 (Tex. Crim. App. 1894) ........................................... 27

*Woodlands Pride v. Paxton,*

   168 F.4th 293 (5th Cir. 2026) ........................................ 2, 20, 39, 47

*Zimmerman v. City of Austin,*

   881 F.3d 378 (5th Cir. 2018) .................................................... 37

**Constitutional Provisions**

Tex. Const. art. IV § 1............................................................ 34

Tex. Const. art. V, § 21 .......................................................... 23

**Statutes**

42 U.S.C. §1983 ................................................................... 9

Tex. Civ. Stat. art.4512.1–4 ..................................................... 23

Tex. Gov't Code §44.252 ........................................................... 7

Tex. Gov't Code §44.252(c) ......................................................... 7

Tex. Gov't Code §44.312 .......................................................... 7, 24

Tex. Gov't Code §44.312(b) ......................................................... 7

Tex. Gov't Code §81.011 .......................................................... 34

Tex. Gov't Code §44.252 .......................................................... 24

Tex. Health & Safety Code §§170A.002–.005 ....................................... 6

Tex. Health & Safety Code §170A.001(1) .......................................... 6

Tex. Health & Safety Code §170A.002(b) .......................................... 6

Tex. Health & Safety Code §170A.003 ............................................. 6

Tex. Health & Safety Code §171.206(b)(2) ........................................ 6

Tex. Health & Safety Code § 171.207(a) ......................................... 41

Tex. Health & Safety Code §245.002 .............................................. 6

Tex. Local Gov't Code §87.001 ................................................... 34

Tex. Local Gov't Code §87.011 ................................................... 8

Tex. Local Gov't Code §87.011(3)(B) ........................................... 17, 23

Texas Rev. Civ. Stat. art. 4512.1–4, 4512.6...........................................................5

Human Life Protection Act of 2021, 2021 Tex. Sess. Law Serv. Ch. 800
     (H.B. 1280), § 4 (West) .................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(1) ..............................................................................12, 13

Fed. R. Civ. P. 12(b)(6) ................................................................................... 13

Fed. R. Civ. P. 41(a)(1)(A)(i) .......................................................................... 19

Fed. R. Civ. P. 43(c)(2) ............................................................................... 11, 12

Fed. R. Civ. P. 56(d) ....................................................................................... 15

Tex. Code Crim. Proc. art. 2A.102(a) ...............................................................23

Tex. Code Crim. Proc. art.2A.101.................................................................. 22

**Other Authorities**

Tex. State Law Library, *History of Abortion Laws,*
     https://guides.sll.texas.gov/abortionlaws/history-of-abortion-laws................. 6

## INTRODUCTION

The district court was correct that under this Court's decision in *Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024), Plaintiffs-Appellants' claims against Defendant-Appellees are barred by sovereign immunity. For the *Ex parte Young* exception to sovereign immunity to apply, "'the state officials must have taken some step to enforce' the statute." *Id.* at 329 (quoting *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020)). No defendant in this case, including Defendant-Appellees Jacob Putman and K. Sunshine Stanek, the Criminal District Attorneys for Smith and Lubbock Counties respectively, has taken any step to enforce the statutes challenged here, nor threatened to do so. In fact, the only officials who *have* done so have no enforcement authority—and no authority over the Defendants. The challenged statutes, which prohibit abortion and pre-date the State's 1856 penal code, have not been enforced by anyone since *Roe v. Wade*, 410 U.S. 113 (1973), and Texas's new abortion restrictions became effective in 2022 after *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). Given that unique context, the uncertain enforcement of the challenged statutes makes this case factually distinct from many other pre-enforcement challenges involving more recently enacted or enforced laws, which means the district court's application of *Ogg* in this case does not create any "per se" rule. Appellant Br. at 6. There is no danger that affirming the district court's decision will render pre-enforcement challenges under *Ex parte Young* "meaningless," as Plaintiffs claim. Appellant Br. at 26.

1

The Court need not even reach the sovereign immunity issue, however, because Plaintiffs lack standing for multiple reasons. Plaintiffs' alleged injury is too speculative because whether Plaintiffs will do anything that could conceivably violate the challenged laws depends on the actions of third parties not before the Court. The Plaintiffs, after all, are abortion funds and an abortion doctor—both of whom cannot even *possibly* violate Texas's pre-*Roe* abortion restrictions in one of the district attorneys' jurisdictions unless a woman seeking an abortion requests their assistance *in that jurisdiction*. *Glass v. Paxton*, 900 F.3d 233 (5th Cir. 2018); *Burnett Specialists v. Cowen*, 140 F.4th 686 (5th Cir. 2025). The Supreme Court is "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013); *accord California v. Texas*, 593 U.S. 659, 675 (2021). Plaintiffs also failed to provide specific evidence about their plans to engage in conduct that arguably violates the pre-*Roe* statutes in counties where the DA defendants have jurisdiction, presenting both an injury-in-fact and a traceability problem. *Laufer v. Mann Hospitality, LLC*, 996 F.3d 269 (5th Cir. 2021); *Paxton v. Dettelbach*, 105 F.4th 708 (5th Cir. 2024); *White Hat v. Murrill*, 141 F.4th 590, 602 (5th Cir. 2025); *Woodlands Pride v. Paxton*, 168 F.4th 293 (5th Cir. 2026).

Whether the Court takes the standing path or the sovereign immunity path to get there, it is clear what the destination should be: Plaintiffs cannot sue a district attorney who has never threatened to enforce a 150-year-old law and where the plaintiffs have no specific plans to engage in conduct that violates that law within the district attorney's jurisdiction. The Court should affirm the judgment below.

*3*

## STATEMENT OF ISSUES

Plaintiffs—abortion funding organizations and an abortion doctor—sued several Texas district attorneys in a challenge to Texas's pre-*Roe* statutes prohibiting abortion, claiming to fear prosecution for "furnishing the means" of an abortion through assisting Texas women in getting an abortion outside the state. The laws are over 150 years old, have not been enforced since before *Roe*, and were never enforced in the way Plaintiffs claim to fear. No defendant has ever threatened to enforce the challenged laws, and their authority to enforce the laws comes only from their general constitutional duty. Plaintiffs also failed to put forth concrete evidence showing that they have a specific intention to engage in conduct that would subject them to prosecution in each defendant's jurisdiction.

The issues presented are:

1.  Does sovereign immunity bar suit against the Defendants?
2.  Do Plaintiffs have standing?

## Statement of the Case

### I.    Factual background

Plaintiffs Fund Texas Choice, TEA Fund, Lilith Fund, Frontera Fund, Afiya Center,[1] West Fund, Jane's Due Process, Buckle Bunnies Fund, Clinic Access Support Network (CASN), and Dr. Ghazaleh Moayedi sued Defendants Jacob Putman and K. Sunshine Stanek (as well as district attorneys for other counties and judicial districts) in their official capacities as the Criminal District Attorneys of Smith County and Lubbock County, respectively. ROA.5582. Plaintiffs sought to enjoin Putman and Stanek (and the other district attorney defendants) from enforcing Texas's criminal statutes prohibiting abortion that pre-dated the Supreme Court's decision in *Roe*, 410 U.S. 113, *overruled by Dobbs*, 597 U.S. 215. Texas Revised Civil Statutes articles 4512.1–4 and 4512.6 (the "pre-Roe laws"), which were recodified in 1974, provide that it is a criminal offense to give a pregnant woman any substance or commit any act to cause an abortion, art. 4512.1, knowingly "furnish[] the means for procuring an abortion," art. 4512.2, or "attempt to produce abortion," art. 4512.3, unless it is done "by medical advice for the purpose of saving the life of the mother," art. 4512.6. These laws predate the creation of the State's penal code in

---

[1] Afiya Center stipulated it lacked standing to sue Jacob Putman in the district court, ROA.18023-26, and did not appeal, ROA.18873. It appears to have ceased operations. *See* Organizational Statement, https://www.theafiyacenter.org/ (last accessed Mar. 2, 2026) (announcing permanent dissolution).

1856.[2] The Supreme Court declared these criminal prohibitions unconstitutional in *Roe* and they were thus unenforceable after that decision, but the laws were never repealed by the Legislature. The Fifth Circuit held in *McCorvey v. Hill* that the laws were impliedly repealed. 385 F.3d 846, 849 (5th Cir. 2004). The Legislature has since clarified that it has not expressly nor impliedly repealed the pre-*Roe* statutes. *See* Tex. Health & Safety Code §171.206(b)(2), Human Life Protection Act of 2021, 2021 Tex. Sess. Law Serv. Ch. 800 (H.B. 1280), § 4 (West).

Regardless of the applicability of the pre-*Roe* laws, other Texas law makes performing most abortions illegal. Tex. Health & Safety Code §§170A.002–.005.[3] Plaintiffs do not challenge this law, which criminalizes "perform[ing], induc[ing], or attempt[ing] an abortion." *Id.*

## A. Jacob Putman and Sunshine Stanek's state-law roles as Criminal District Attorney

The Texas Constitution creates the offices of district attorney and county attorney. Tex. Const. art. 5, §21, *see also id.* §30. They are part of the State's Judicial Department. *See generally* Tex. Const. art. V. Under the Texas Constitution, the

---

[2] *See* Tex. State Law Library, *History of Abortion Laws,* https://guides.sll.texas.gov/abortionlaws/history-of-abortion-laws (last accessed Mar. 2, 2026).

[3] The law explicitly does not permit prosecution of the pregnant woman, Tex. Health & Safety Code §170A.003, and it explicitly allows for abortions to be performed where, in the "reasonable medical judgment" of the physician, "the female [is] at risk of death or poses a serious risk of substantial impairment of a major bodily function unless the abortion is performed or induced," *id.* §170A.002(b). The law also excludes contraception, treatment for miscarriages, and ectopic pregnancies from the definition of abortion. *Id.* §170A.001(1); *id.* §245.002.

Legislature regulates the "respective duties" of district attorneys and county attorneys, "provide[s] for the election of District Attorneys," and "make[s] provision for the compensation of District Attorneys and County Attorneys." Tex. Const. art. V, §21. Some counties in Texas have Criminal District Attorneys, *see* Tex. Gov't Code §44.001, which merge the offices of district attorney (felony prosecutions) and county attorney (misdemeanors, civil matters) into one office handling both. *See, e.g.,* Tex. Gov't Code §§44.252(c), 44.312(b). Criminal District Attorneys are compensated by the State. Tex. Gov't Code §41.013.

Defendant Jacob Putman is the elected Criminal District Attorney of Smith County. ROA.9522. Under state law, he is required to "attend each term and session of the district courts of Smith County and each term and session of the inferior courts of the county held for the transaction of criminal business and shall exclusively represent the state in all criminal matters before those courts." Tex. Gov't Code §44.312. In Smith County, Putman exercises the powers of both county attorneys and district attorneys. Tex. Gov't Code §44.312(b).

Defendant K. Sunshine Stanek is the elected Criminal District Attorney of Lubbock County. Under state law, she is required to "attend each term and session of the district courts of Lubbock County and each term and session of the inferior courts of the county held for the transaction of criminal business and shall exclusively represent the state in all criminal matters before those courts." Tex. Gov't Code §44.252. In Lubbock County, Stanek exercises the powers of both county attorneys and district attorneys. Tex. Gov't Code §44.252(c).

In Texas, district attorneys are prohibited from "adopt[ing] or enforc[ing] . . . a policy of refusing to prosecute a class or type of criminal offense under state law or instructing law enforcement to refuse to arrest individuals suspected of committing a class or type of offense under state law." Tex. Local Gov't Code §§87.011(1), (3)(B).

### B. Plaintiff-Appellants

The current Plaintiff-Appellants are several non-profit organizations (and one unincorporated association) and an abortion doctor, Ghazaleh Moayedi. The organizations, Fund Texas Choice, North Texas Equal Access Fund, Lilith Fund for Reproductive Equality, Frontera Fund, West Fund, Jane's Due Process, Clinic Access Support Network, and Buckle Bunnies Fund (collectively, the "Fund Plaintiffs") provided logistical and financial aid to women in various locations in Texas seeking abortions while abortion was legal in Texas. ROA.5562-80. The Fund Plaintiffs claim that they wish to provide financial and logistical aid to women in Texas seeking abortions where legal—or outside Texas. ROA.5563, 5564-65, 5566, 5568-69, 5571, 5573-74, 5574, 5576. The Fund Plaintiffs do not seek to perform abortions in Texas or provide women with abortion pills in Texas. *See id.* Dr. Moayedi performed abortions in Texas while it was legal and now claims that she desires to perform abortions outside Texas on Texas women. ROA.5577-78. Dr. Moayedi no longer performs abortions in Texas and does not provide women with abortion pills in Texas. *See id.*

### C. Original defendants and initial lawsuit

After the State's "trigger" abortion ban became effective in the wake of the Supreme Court's decision in *Dobbs*, 597 U.S. 215, Plaintiffs brought suit in August 2022

against Attorney General Ken Paxton as well as Travis County District Attorney Jose Garza, Burleson County Attorney Susan Deski, Washington County District Attorney Julie Renken, 33rd and 424th Judicial District Attorney Wiley B. McAfee, and Caldwell County Criminal District Attorney Fred Weber (the "original DA defendants"). ROA.103-04, 5580-81.[4] Plaintiffs brought facial and as-applied challenges to Texas's pre-*Roe* abortion statutes,[5] Texas's Trigger Ban,[6] and the Texas Heartbeat Act[7] via 42 U.S.C. §1983, claiming that the laws violate their First Amendment rights and their right to travel because they feared prosecution if they provided financial or logistical aid to Texas women obtaining abortions in other states (or in the case of Dr. Moayedi, if she performed an abortion on a Texas woman in another state). ROA.123-37. The original DA defendants entered into stipulations with the Plaintiffs agreeing that the Attorney General would defend the constitutionality of the challenged laws, that Plaintiffs were suffering irreparable injury from potential prosecution under the challenged laws, that Plaintiffs' injuries were redressable by an order from the district court "defining the constitutionality and scope of the challenged laws," and agreeing that they would not seek to enforce the challenged laws before a final judgment was entered in the case. ROA.842-51.

---

[4] Plaintiffs did not include the correct legal office for all the original DA defendants in their Complaint, but the titles listed here are correct to the undersigned's knowledge.

[5] Tex. Rev. Stats. Ann. arts. 4512.1-.4, .6.

[6] Tex. Health & Safety Code §§170A.001, *et seq*.

[7] Tex. Health & Safety Code §§171.208-.210.

The district court dismissed the claims against the Attorney General because he does not enforce any of the challenged laws. *Fund Tex. Choice v. Paxton*, 658 F. Supp. 3d 377, 403 (W.D. Tex. 2023).[8] The district court also dismissed the claims involving the Trigger Ban and the Heartbeat Act against the original DA defendants, *id.* at 415, because it determined that the Trigger Ban does not apply to the Plaintiffs' desired conduct, *id.* at 401, and that the DA defendants lack enforcement authority under the Heartbeat Act, *id.* at 402. The district court determined that the Plaintiffs had standing to sue the original DA defendants to enjoin enforcement of the pre-*Roe* statutes because even though the Texas Court of Criminal Appeals had previously held that the challenged "furnishing" provision only refers to "literally provid[ing] the procedure or medicine to bring about an abortion," it could still conceivably apply to Plaintiffs' conduct because "it is unclear whether the 126-year-old case would still be binding on Texas courts who might now understand those words differently." *Id.* at 405. The district court also stated, *sua sponte*, that "district and county attorneys are not protected by Eleventh Amendment immunity." *Id.* at 403. The district court preliminarily enjoined the DA defendants from enforcing the pre-*Roe* statutes. *Id.* at 415.[9] No party appealed.

---

[8] Before the district court ruled on Paxton's motion to dismiss and the Plaintiffs' motion for preliminary injunction, there was a detour to this Court on a petition for writ of mandamus challenging the district court's decision to allow Plaintiffs to depose the Attorney General. *In re Paxton*, 60 F.4th 252 (5th Cir. 2023).

[9] The preliminary injunction appeared not to limit relief to the Plaintiffs but seemingly enjoins the DA defendants from enforcing the pre-*Roe* laws against *anyone*. *Id.*

### D. Plaintiffs amend and expand their lawsuit

After this ruling, Plaintiffs amended their complaint a third time in April 2023, this time naming several additional DAs and Criminal District Attorneys in their official capacities: Gocha Allen Ramirez, 229th Judicial District Attorney (which includes Starr County); Richard E. Glaser, Criminal District Attorney of Fannin County;[10] Ryan Sinclair, 355th Judicial District Attorney (which includes Hood County); Bill D. Hicks, 34th Judicial District Attorney (which includes Hudspeth County);[11] Joe Gonzales, Criminal District Attorney of Bexar County; Toribio Palacios, Criminal District Attorney of Hidalgo County; and Ori T. White, 83rd Judicial District Attorney (which includes Pecos County);[12] as well as DA Putman and DA

---

[10] DA Glaser has since been replaced by John Skotnik, ROA.18845, who is automatically substituted as a Defendant-Appellee under Fed. R. Civ. P. 43(c)(2).

[11] DA Hicks has since been replaced by James Montoya, ROA.18845, who is automatically substituted as a Defendant-Appellee under Fed. R. Civ. P. 43(c)(2).

[12] DA White never appeared or responded in the district court. Rather than pursue a default judgment, Plaintiffs voluntarily dismissed him after the other DA defendants were dismissed. *See* ROA.18865-71. He is not a party to this appeal.

Stanek. ROA.5580-83.[13] Plaintiffs still asserted claims against the original DA defendants Garza, Deski, Renken,[14] McAfee,[15] and Weber. Plaintiffs sued the DA defendants as representatives of a putative defendant class of all Texas district attorneys. ROA.5609-12. Plaintiffs sued under 42 U.S.C. §1983, again alleging that they were being constitutionally injured because they claimed to fear prosecution under the pre-*Roe* laws by the DA Defendants. *See* ROA.5578-80. This time, Plaintiffs limited their claims to facial and as-applied challenges to the pre-*Roe* statute and the Heartbeat Act.[16]

## II.    Procedural history

### A. Motions to dismiss

The new DA defendants each filed motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction in June and July 2023, arguing that the Plaintiffs lacked standing because there was no causal connection between the Plaintiffs' in-

---

[13] Plaintiffs did not include the correct legal office for all the DA Defendants in their Second Amended Complaint, but the titles listed here are correct to the undersigned's knowledge.

[14] DA Renken has since been replaced by Derek Estep, who is automatically substituted as a Defendant-Appellee under Fed. R. Civ. P. 43(c)(2).

[15] DA McAfee has since been replaced by Perry Thomas, ROA.18845, who is automatically substituted as a Defendant-Appellee under Fed. R. Civ. P. 43(c)(2).

[16] The Second Amended Complaint also added several private citizens as defendants to their renewed challenge to the Heartbeat Act. ROA.5583-84. The district court dismissed these defendants on October 29, 2024. ROA.17999-18012. Plaintiffs do not challenge that ruling on appeal. *See generally* Appellants' Br. (no mention of the Heartbeat Act or the private individual defendants).

jury and the DAs, who had never threatened Plaintiffs with enforcement, and because the Plaintiffs' claims were unripe. ROA.6088-95 (Ramirez), ROA.6096-04 (Gonzales), ROA.6105-12 (Hicks), ROA.6113-20 (Palacios), ROA.6163-70 (Glaser and Sinclair), ROA.6310-19 (Stanek).

DA Putman moved to dismiss under Rules 12(b)(1) and 12(b)(6), both for lack of standing and for failure to state a claim. ROA.6121-62. DA Putman pointed out that while Plaintiffs never alleged that they engaged in protected conduct in Smith County, nor did they specifically allege that they intended to do so in the future. Thus, Plaintiffs did not have an injury-in-fact traceable to Putman, who only has jurisdiction to prosecute crimes committed in Smith County. ROA.6134, 6138-40. Putman pointed out that Plaintiffs failed to plead that the pre-*Roe* statutes applied to their conduct, and that they actually pleaded the opposite. ROA.6134-39, 6529-32, 6535. Putman also argued that the complaint did not adequately allege a substantial threat of enforcement by him, as the Plaintiffs alleged that the non-applicability of the pre-*Roe* statutes to their desired activities is settled law, and assume without evidence that Putman would nevertheless seek to enforce the law against them. ROA.6137-40, 6141, 6531-32, 6534; *see also* ROA.5585, 5591 (alleging that "Texas courts interpreted 'furnish[ing] the means for procuring an abortion' to apply to providing drugs, medicine, or instruments that could produce an abortion, or committing violence upon the pregnant person to bring about an abortion," and "application of the Pre-*Roe* Statutes to Texans' travel out-of-state, or of Plaintiffs' support

13

of that travel, is barred by Texas's own expression of the limits of its criminal jurisdiction"). Putman also made clear that he has never threatened to enforce the pre-*Roe* statutes against anyone, including Plaintiffs. ROA.6129-31, 6534-35.

In December 2023, the district court denied all motions to dismiss. ROA.9315-32. The district court reiterated its previous conclusion that the Texas Court of Criminal Appeals' decision in *Moore v. State*, 40 S.W. 287, 290 (Tex. Crim. App. 1897), which limited the applicability of the phrase "furnish the means," was "likely dicta" and too old to apply now, so it was still true that the law "arguably" proscribed Plaintiffs' conduct, even though the court admitted that was not the most "plausible" interpretation. ROA.9325-26. The district court found that general allegations that Plaintiffs wished to provide abortion support for Texans without naming any specific jurisdiction were sufficient to establish standing at the motion-to-dismiss stage against the DA defendants, as it is "not speculative that if Plaintiffs desire to facilitate abortion travel for all Texans who seek abortions, that will include those who live in Smith County" and that it is a "reasonable inference" that the Plaintiffs will help women in Smith County. ROA.9328-29. The court found a threat of enforcement in the mere existence of the pre-*Roe* statutes, citing *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), as well as the fact that *other* state officials (with no enforcement authority) made statements supporting the enforcement of the pre-*Roe* statutes. ROA.9326-27. The court ignored Putman's 12(b)(6) arguments. *See* ROA.9324 ("the validity of [Plaintiffs'] constitutional claims may be more fully litigated in a 12(b)(6) motion").

14

### B.  Class certification briefing and discovery

A few weeks after the district court denied motions to dismiss, Plaintiffs moved to certify a defendant class of Texas DAs. ROA.9686-9715. But before that motion was resolved, Plaintiffs filed a motion for partial summary judgment against the DA Defendants in May 2024. ROA.14768-15077. DA Putman moved to stay the deadline for his summary judgment response under Fed. R. Civ. P. 56(d), asserting that because there was no scheduling order, he had not yet taken discovery, and he was entitled to discovery on Plaintiffs' standing. ROA.15789-801.

In June 2024, the district court denied class certification and granted DA Putman's 56(d) motion, allowing for limited discovery. ROA.16225-36. For the first time as to the DA defendants, it also entered a scheduling order providing deadlines for the amendment of pleadings, discovery, and dispositive motions. ROA.16308-09. DA defendants Ramirez, Garza, Gonzales, Deski, Renken, McAfee, Weber, Glaser, Sinclair, Palacios, Stanek, and Hicks filed responses to Plaintiffs' motion for partial summary judgment asserting that they are entitled to sovereign immunity. ROA.17135-82, 17324-31, 17509-22. DA defendants Deski, Renken, McAfee, Weber, Glaser, and Sinclair also filed a motion to dismiss for lack of jurisdiction based on sovereign immunity. ROA.17373-81.

Rather than submit to a deposition, Plaintiffs Afiya Center, Frontera Fund, West Fund, and CASN stipulated that they lacked standing to sue DA Putman. ROA.18019-34. DA Putman proceeded with written discovery and took depositions of the corporate representatives of the rest of the Plaintiff organizations and Plaintiff

15

Moayedi. In return, Plaintiffs demanded DA Putman's deposition even though discovery had previously been limited to the matters listed in Putman's 56(d) motion, which the district court compelled over Putman's objection. ROA.17523-80, 18035-40, 18054-108, 18158-61.[17]

### C. Summary judgment

DA defendants Garza, Deski, Estep, Thomas, Weber, Skotnik, Sinclair, Gonzales, and Montoya filed motions for summary judgment arguing that they are entitled to sovereign immunity under *Ogg*. ROA.18247-94, 18661-65. DA Putman filed his response to Plaintiffs' motion for partial summary judgment, ROA.18295-321, as well as his own motion for summary judgment, ROA.18322-510. DA Putman argued that by refusing to answer questions regarding any past activities the remaining Plaintiffs feared prosecution for in Smith County and any intended future actions they intended to take in Smith County that they believed would subject them to prosecution under the pre-*Roe* statutes, Plaintiffs failed to show evidence that they have standing. ROA.18825-31, 18333-37. Putman further pointed out that Plaintiffs' alleged injury is contingent upon others not before the court taking certain actions (i.e.

---

[17] The district court said that Plaintiffs could take Putman's deposition because of this Court's ruling in *Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024), which "clarifie[d] what is needed for plaintiffs to bring suit against prosecutors under *Ex parte Young*" and "potentially makes new factual inquiries from the DA defendants relevant," and was issued after the scheduling order was entered. ROA.18038-39. *Ogg* held that a challenge to the Texas Election Protection and Integrity Act of 2021 was barred because the defendant Kim Ogg, the District Attorney of Harris County, was entitled to sovereign immunity. 105 F.4th 313.

a woman in Smith County asking one of the Plaintiffs for assistance in obtaining an abortion), making it speculative. ROA.18829. DA Putman also pointed to his own testimony demonstrating that there was no imminent threat of enforcement against Plaintiffs sufficient to maintain standing and to fit within the *Ex parte Young* exception to sovereign immunity as articulated by *Ogg*. ROA.18337-46, 18832-34.

### D. The district court's summary judgment ruling

On May 23, 2025, the district court dismissed the DA defendants from the case because it found that the DA defendants are entitled to sovereign immunity under *Ogg*.[18] ROA.18865-66. The district court analyzed the DA defendants' sovereign immunity under its articulation of the three "guideposts" this Court uses to determine whether a state official may be sued under *Ex parte Young*. ROA.18857-65.

As to the first guidepost, whether the official has the "'particular duty to enforce the statute in question,'" *Ogg*, 105 F.4th at 325 (quoting *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)), the district court held that while the DA defendants had the discretionary authority to enforce the pre-*Roe* statutes, like all other Texas statutes, that was not specific enough to "give rise to a particular duty to act." ROA.18856 (quoting *Ogg*, 105 F.4th at 327). The district court was unpersuaded by Plaintiffs' argument that Texas Local Government Code section 87.011(3)(B), which provides that "adoption or enforcement of a policy of refusing

---

[18] DA Stanek, Ramirez, and Palacios did not move for summary judgment but presented their sovereign-immunity defenses in their summary judgment responses. ROA.18865.

17

to prosecute a class or type of criminal offense" is official misconduct for prosecutors, means that Texas DAs have a "specific duty" to enforce the pre-*Roe* statutes in particular. ROA.18859.

The district court also concluded that the second guidepost, whether an official has a "demonstrated willingness to exercise that [particular] duty," *Ogg*, 105 F.4th at 325 (citation omitted), weighs in favor of sovereign immunity because none of the DA defendants had threatened or taken any steps toward enforcement of the pre-*Roe* statutes in the four years since *Dobbs*, and because a mere failure to disavow enforcement is insufficient to show the "scintilla of affirmative action by the state official" necessary to demonstrate "willingness." ROA.18860-64 (citation omitted).

Finally, the district court determined that the third guidepost, whether "the state official, through her conduct, compels or constrains persons to obey the challenged law," *Ogg*, 105 F.4th at 325 (citation omitted), also weighs in favor of sovereign immunity. It concluded that mere "silence" of the DA defendants despite the claims of other state officials with no enforcement authority that the laws could be enforced was insufficient to compel or constrain Plaintiffs, even if Plaintiffs were "chilled." ROA.18864-65.

While the district court opined that some evidence pointed to by the Plaintiffs may be sufficient for standing purposes but not for sovereign immunity, *see* ROA.18856, 18861, it declined to reach the issue of standing, ROA.18865. The district court further ordered that all remaining motions, such as Plaintiffs' motion for partial summary judgment, are moot, and it ordered that Plaintiffs either move for entry of default judgment against 83rd District Attorney Ori White or dismiss him

18

under Rule 41(a)(1)(A)(i) by June 6, 2025. ROA.18866. Plaintiffs opted to dismiss him, ROA.18867-69, and the district court entered final judgment on June 11, 2025, ROA.18872. Plaintiffs appealed on July 10, 2025. ROA.18873.

## Summary of the Argument

The Court lacks subject matter jurisdiction over the claims against DA Putman and DA Stanek because they are barred by sovereign immunity and because Plaintiffs lack standing.

Using the three guideposts this Court applies to ascertain whether state officials have a sufficient "connection to enforcement" to fit within the *Ex parte Young* exception to sovereign immunity, the district court correctly determined that Plaintiffs' claims are barred. *See* Part I *infra*. Under the first guidepost, DA Putman and DA Stanek (and the rest of the DA defendants) have no "specific duty" to enforce the pre-*Roe* statutes. *Ogg*, 105 F.4th at 325. *See* Part I.A *infra*. The second guidepost, a "demonstrated willingness to enforce," *Ogg*, 105 F.4th at 325, similarly points away from application of *Ex parte Young* because there is no evidence to support it. *See* Part I.B *infra*. The pre-*Roe* statutes have never been enforced by any of the DA defendants, nor have they ever been enforced since *Roe* was overruled by *Dobbs*. There is also no history of enforcement of the pre-*Roe* laws predating *Roe* in the way that Plaintiffs fear. *See* Part I.B.1 *infra*. The final guidepost, whether the defendant has "constrained" or "compelled" the plaintiff, *Ogg*, 105 F.4th at 325, confirms that the *Ex parte Young* exception is inapplicable. Neither DA Stanek nor DA Putman have done or threatened to do anything with respect to the challenged laws.

Even if the Court disagrees with the district court's sovereign immunity holding, Plaintiffs' claims are still barred because they lack standing. *See* Part II *infra*. Plaintiffs lack injury in fact because they have no evidence demonstrating that they have specific intentions to engage in conduct that will trigger enforcement in either Smith or Lubbock County. *See* Part II.A.1 *infra*. Plaintiffs' claimed injury is also too speculative because it depends on a chain of contingencies involving the decisions of third parties not before the Court. *See* Part II.A.2 *infra*. And while the Court may assume a threat of enforcement if the challenged law implicates the First Amendment, assuming the challenged laws here even do, that assumption only applies where a law is recently enacted. *See* Part II.A.3 *infra*. Plaintiffs also fail to demonstrate traceability and redressability. As this Court held in *Woodlands Pride*, a plaintiff that falls short of providing evidence of concrete intentions to engage in conduct in a defendant DA's jurisdiction lacks standing to sue that DA. 168 F.3d at 306-07. *See* Part II.B *infra*. And if there is no ongoing harm, or at least a "substantial risk" that an injury will occur, the prospective relief that Plaintiffs are limited to under the *Ex parte Young* doctrine will not redress any injury. *Clapper*, 568 U.S. at 414 n.5. *See* Part III.C. *infra*.

## STANDARD OF REVIEW

This court "review[s] grants of summary judgment *de novo*, applying the same standard as the district court." *Catalyst Strategic Advisors, L.L.C. v. Three Diamond Capital Sbc, L.L.C.*, 93 F.4th 870, 874 (5th Cir. 2024) (citation omitted). Sovereign immunity and standing rulings are also reviewed *de novo*. *La Union del Pueblo Entero v. Abbott*, No. 24-50783, 2026 WL 391215, at *2 (5th Cir. Feb. 12, 2026). The Court

20

"may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001).

## ARGUMENT

### I.    Sovereign Immunity Bars Plaintiffs' Claims Against DA Putman and DA Stanek.

"Generally, state sovereign immunity precludes suits against state officials in their official capacities." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020). The legal fiction of *Ex parte Young*, 209 U.S. 123 (1908), however, provides an "exception to Eleventh Amendment sovereign immunity" in the subset of cases to which it applies. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). The exception permits federal courts to enjoin prospective unconstitutional conduct by "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, *and who threaten and are about to commence proceedings, either of a civil or criminal nature*." *Ex parte Young*, 209 U.S. 123, 155–56 (1908) (emphasis added).[19] For a plaintiff to properly invoke *Ex parte Young*, the state official sued must have "some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state,

---

[19] The parties, both here and below, agree that the DA defendants are state officials for purposes of enforcing the challenged state laws. The district court assumed that to be true, and so has this Court. *Ogg*, 105 F.4th at 325-33.

and thereby attempting to make the state a party." *Id.* at 157; *see also City of Austin*, 943 F.3d at 997.

This Court uses three "guideposts" to determine whether there is sufficient connection to enforcement for *Ex parte Young* to apply:

> (1) the state official has 'more than the general duty to see that the laws of the state are implemented,' *i.e.*, a 'particular duty to enforce the statute in question'; (2) the state official has 'a demonstrated willingness to exercise that duty'[; and (3) the state official, through her conduct, 'compel[s] or constrain[s persons] to obey the challenged law.'

*Ogg*, 105 F.4th at 325. As the district court correctly held, the three guideposts show that sovereign immunity should apply in full force to the DA defendants here, including DA Putman and DA Stanek.

### A. DA Putman and DA Stanek have no "specific duty" to bring prosecutions under the pre-*Roe* laws.

Under the first "guidepost," a "'general duty to enforce the law is insufficient.'" *Ogg*, 105 F.4th at 326 (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020)). But that's all the DA defendants have here. As the Criminal District Attorneys of Lubbock and Smith County, DA Stanek and DA Putman have the authority to bring prosecutions, but they retain discretion over which cases to bring. And as *Ogg* held as to the Harris County DA, "mere authority is not enough" for *Ex parte Young* to apply. *Id.* at 326. Texas Code of Criminal Procedure article 2A.101 states that "the primary duty of an attorney representing the state, including a special prosecutor, is not to convict but to see that justice is done." A district at-

22

torney "shall represent the state in all criminal cases in the district courts of the attorney's district and in appeals from those cases," Tex. Code Crim. Proc. art. 2A.102(a); *see also* Tex. Const. art. V, §21, but that command only applies to existing cases. Whether or not to bring a prosecution is up to a particular prosecutor according to state law. *See Meshell v. State*, 739 S.W.2d 246, 254 (Tex. Crim. App. 1987) ("An obvious corollary to a district or county attorney's duty to prosecute criminal cases is the utilization of his own discretion in the preparation of those cases for trial."). And there is nothing in Texas law that "commands" that district attorneys like Stanek and Putman "shall" prosecute under the pre-Roe laws in particular. *Ogg*, 105 F.4th at 328; *see also* Tex. Rev. Civ. Stat. arts. 4512.1–6 (the pre-Roe laws contain no language "command[ing]" prosecution).

Plaintiffs claim nonetheless that Texas Local Government Code section 87.011(3)(B) constrains that authority. But that provision of law only provides that it is "official misconduct" for a prosecuting attorney to "adopt[] or enforce[] . . . a policy of refusing to prosecute a class or type of criminal offense under state law." All that means here is that no DA defendant may have a policy of refusing to prosecute any offenses under criminal abortion statutes. It does not follow that the DA defendants here are specifically required to prosecute all abortion-related crimes under all abortion statutes, including under the pre-*Roe* statutes Plaintiffs challenge here.

And as a matter of undisputed fact, DA Putman confirmed his understanding that there is no state law that specifically commands him to enforce the laws at issue

23

here, ROA.18355, and explained how his office uses prosecutorial discretion to determine which cases to bring, ROA.18354. He further explained that his office's normal process would apply to any offense, even involving abortion. ROA.18361, 18362, 18364, 18365. DA Putman has the same statutory authority as DA Stanek. *See* Tex. Gov't Code §§44.312, 44.252.  Thus, DA Stanek and Putman's duty under the pre-*Roe* laws remains a general one, the same as their general duty to enforce all criminal laws of Texas. As this Court found in *Ogg*, "that is not enough." 105 F.4th at 328 (citing *Scott*, 28 F.4th 669, 674 (5th Cir. 2022)). The first guidepost thus points away from application of the *Ex parte Young* exception.

**B.  DA Putman and DA Stanek have no "demonstrated willingness" to enforce the pre-Roe laws.**

To determine whether an official has demonstrated a willingness to enforce a challenged statute—the second guidepost—this Court "consider[s] the prior or contemporaneous affirmative acts of the named official." *Id.* at 330 (citing *K.P. v. LeBlanc*, 627 F.3d 115, 124–25 (5th Cir. 2010) (considering Board's prior enforcement of the statute); *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 395 (5th Cir. 2015) (considering Attorney General's letters threatening enforcement). "'This is consistent with *Ex parte Young*'s foundational requirement that a violation of federal law be ongoing.'" *Id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). In *Ogg*, there was no past enforcement because the case was filed before the challenged provisions of the Election Code became effective, so the Court noted that "a history of prior enforcement is not required, especially in the pre-enforcement context that applies here." *Id.* at 330.

24

But the laws challenged here are not brand-new laws that have never been enforced against anyone. In such circumstances, there might be reason to assume that a district attorney will enforce them, especially if they implicate the First Amendment.[20] But that is not the case here. The challenged laws here are not "recently enacted"—they pre-date the Texas Penal Code. There is longstanding Texas case law interpreting them in a way that contradicts Plaintiffs' arguments of applicability to their activities, as Plaintiffs themselves acknowledge. *See Moore*, 40 S.W. at 290; ROA.6134-39, 6529-32, 6535. And even assuming their enforceability since the *Dobbs* decision in June 2022, the pre-*Roe* laws haven't been enforced in the intervening four years even one time by *any* Texas DA. These facts distinguish this case from others Plaintiffs point to involving newer laws with a history of enforcement. It also makes it even more obvious than in *Ogg* (which involved a challenge to recent amendments to the Texas Election Code) that the DA defendants should have sovereign immunity here.

But even if the mere presence of the pre-*Roe* laws provides sufficient basis to assume that they will be enforced by Stanek or Putman for standing purposes (and it does not, as explained below at Part II.3), that does "not necessarily establish an enforcement connection" required to avoid sovereign immunity. *Ogg*, 105 F.4th at 330.

---

[20] *See, e.g., Speech First*, 979 F.3d at 335 (Only in the First Amendment context and "when dealing with pre-enforcement challenges to recently enacted (or at least, non-moribund) statutes" will courts "assume a credible threat of prosecution" based on the mere existence of the law and its facial applicability to the plaintiff's speech activities.)

Here, as in *Ogg*, "regardless of whether the record is sufficient to establish standing, it does not support the conclusion that [the DA] has demonstrated a willingness to enforce the challenged . . . provisions." *Id.* Like *Ogg*, Stanek and Putman "ha[ve] taken no action with respect to the . . . provisions challenged by the Plaintiffs." *Id.* Stanek and Putman (and the other DA defendants) "never enforced the challenged provisions in the past." *Id.* Plaintiffs nevertheless must have *some* evidence of "action taken by [the DA] to show a demonstrated willingness to enforce." *Id.* But they do not, as the summary judgment record shows.

### 1. Historic enforcement of the pre-*Roe* laws did not include enforcement against individuals similarly situated to Plaintiffs.

Plaintiffs contend that looking for evidence of "actual recent enforcement" would "impose an impossible standard" because of the 50 years the statutes were unenforceable because of *Roe*. Appellants' Br. at 10 n.5. But *Roe* was overruled nearly four years ago, and *not one* DA, even those uninvolved in this case, has enforced the pre-*Roe* laws. As the district court concluded, "[c]onsidering the length of time Plaintiffs have had to find evidence of willingness to enforce, and their inability to do so, the Court finds that the second guidepost tips in Defendants' favor." ROA.18862.

Plaintiffs seek to distract from the four-year period of non-enforcement after *Dobbs* by arguing that the pre-*Roe* laws were "regularly enforced" before *Roe*. Appellants' Br. at 14. This hardly means that *these* DA defendants would choose to enforce them against *these* Plaintiffs or with the same frequency, given each DA's prosecutorial discretion. In any event, none of the cases they cite appear to involve liability

26

for providing financial or other assistance for a legal abortion occurring *outside the state*, or for performing a legal abortion *outside the state*, as Plaintiffs claim to fear here. One case cited by Plaintiffs, *Moore*, actually held that a prosecution for abortion is properly had in the county where the acts producing the abortion were performed. 40 S.W. at 292. And none of the cases even involve liability for "furnishing the means" short of actually using or providing the instrument or medication to the pregnant woman for the purpose of causing an abortion—something that is now illegal in Texas regardless of the pre-*Roe* statutes. [21] The only two exceptions in the

---

[21] *See Willingham v. State*, 25 S.W. 424 (Tex. Crim. App. 1894) (conviction for providing drugs to produce abortion); *Cave v. State*, 26 S.W. 503 (Tex. Crim. App. 1894) (conviction for using drugs to produce abortion); *King v. State*, 34 S.W. 282 (Tex. Crim. App. 1896) (conviction for performing abortion); *Moore*, 40 S.W. 287 (conviction for using drugs and instruments to produce abortion); *Wandell v. State*, 25 S.W. 27 (Tex. Crim. App. 1897) (indictment for using an instrument to produce abortion); *Reum v. State*, 90 S.W. 1109 (Tex. Crim. App. 1905) (conviction for using drugs and instruments to produce abortion); *Jackson v. State*, 115 S.W.262 (Tex. Crim. App. 1908) (indictment for using instruments to produce abortion); *Link v. State*, 164 S.W. 987 (Tex Crim. App. 1914)(same); *Shaw v. State*, 165 S.W. 930 (Tex. Crim. App. 1914) (same); *Gray v. State*, 178 S.W. 337 (Tex. Crim. App. 1915) (same); *Hunter v. State*, 196 S.W. 820 (Tex. Crim. App. 1917) (conviction for attempting abortion using drugs); *Earnest v. State*, 202 S.W. 739 (Tex. Crim. App. 1918) (reversing conviction for performing abortion); *Tonnahill v. State*, 208 S.W. 516 (Tex. Crim. App. 1919) (reversing conviction for using drugs to produce abortion); *Earnest v. State*, 224 S.W. 777 (Tex. Crim. App. 1919) (conviction for using instruments to produce abortion); *Crossett v. State*, 235 S.W. 599 (Tex. Crim. App. 1921) (reversing conviction for using drugs to produce abortion); *Crissman v. State*, 245 S.W. 438 (Tex. Crim. App. 1922) (involving conviction for performing abortion); *Ex parte Vick*, 292 S.W. 889 (Tex. Crim. App. 1927) (charge of murder due to death resulting from the performance of an abortion); *Limicy v. State*, 185 S.W.2d 571 (Tex. Crim. App. 1945) (reversing conviction for inducing abortion by beating victim); *Jarquin v.*

many cases cited by Plaintiffs show the defendants were criminally involved in the abortion in ways far different than the role Plaintiffs might play. *See Fondren v. State*, 169 S.W. 411 (Tex. Crim. App. 1914) (defendant impregnated his stepdaughter and forced her to undergo an abortion); *Hammett v. State*, 209 S.W. 661 (Tex. Crim. App. 1919) (defendant was a married man who had "criminally" impregnated the victim, took the victim to the next county, secured a physician and remained present while the physician performed the procedure, and directly paid for the abortion). Thus, even if historical enforcement by other DAs in the distant past is relevant to determining whether *these* DA defendants are willing to prosecute, there is no historical evidence of enforcement in the ways Plaintiffs claim to fear. And there is no evidence since *Dobbs* that any DA has enforced the pre-*Roe* statutes at all.

---

*State*, 232 S.W.2d 736 (Tex. Crim. App. 1950) (conviction for using drugs and instruments to produce abortion); *Welch v. State*, 264 S.W.2d 100 (Tex. Crim. App. 1953) (conviction for using drugs to produce abortion); *Mayberry v. State*, 271 S.W.2d 635 (Tex. Crim. App. 1954) (conviction for using drugs and instruments to produce abortion); *Cortez v. State*, 275 S.W.2d 123 (Tex. Crim. App. 1954) (conviction for using instruments to produce abortion); *Owens v. State*, 283 S.W.2d 749 (Tex. Crim. App. 1955) (same); *Davis v. State*, 328 S.W.2d 315 (Tex. Crim. App. 1959) (reversing conviction for using instruments to produce abortion); *Veevers v. State*, 354 S.W.2d 161 (Tex. Crim. App. 1962) (conviction for using instruments and drugs to produce abortion); *Thompson v. State*, 493 S.W.2d 913 (Tex. Crim. App. 1971) (conviction for performing abortion).

### 2. DA Putman's testimony makes clear that Plaintiffs have no proof of "willingness" to prosecute them in Smith County.

"Although an 'actual threat of or imminent enforcement is not required,' some affirmative action on the part of the named defendant is." *Ogg*, 105 F.4th at 330-31 (quoting *Calhoun v. Collier*, 78 F.4th 846, 851 (5th Cir. 2023)). All Plaintiffs admit that Putman has never threatened them with enforcement. See ROA.18374 (Buckle Bunnies); ROA.18379 (Fund Texas Choice); ROA.18385 (Ghazaleh Moayedi); ROA.18391 (Jane's Due Process); ROA.18399 (Lilith Fund); ROA.18405-06 (TEA Fund) (stating DA Putman's discovery requests to Plaintiffs in this lawsuit were the only "threat" against TEA Fund); *see also* ROA.18019-34 (Frontera Fund, West Fund, and CASN stipulated that they lack standing to sue DA Putman). And Putman's undisputed testimony makes it crystal clear that he has no "imminent" intention to prosecute the Plaintiffs at all, much less under the pre-*Roe* statutes. Putman testified that:

- He does not know whether the pre-*Roe* statute is even still good law or whether his office would have a "role in prosecuting" under that statute, ROA.18361, and he would not be in a position to make such a decision until someone brought him a case that had been investigated as a violation of that statute, and that has not happened, *see id.*;

- He has not had "any conversations with anyone about locating cases that might be prosecuted under the abortion statutes of Texas," nor "any discussions about recruiting folks who might complain about folks violating the abortion statutes of Texas," *see id.*;

29

- Notwithstanding the Attorney General's position that the pre-*Roe* statutes are immediately enforceable, he has no position on that and would only consider the laws' effectiveness "if and when law enforcement brought [him] a case to consider" because "we don't go through the Penal Code and look at each statute and see what we think about it. When a case is brought to us, then we analyze it and see what we need to do with it," ROA.18362;

- Putman's office does not provide guidance to law enforcement as to how to enforce the pre-*Roe* statutes, and in fact has not done so, and he "can't speak to all the ways [law enforcement] might be informed about what statutes to investigate," *see id.*;

- He is not aware that many of the Plaintiffs in this case are abortion funds, but he does not know whether funding an abortion is a crime and he can't say whether there would be a prosecutable case without actually seeing a specific case because, as one example, crimes often turn on intent, ROA.18364-65.

This testimony shows that Putman has no "demonstrated willingness" to enforce the challenged provisions against Plaintiffs other than a general willingness to enforce any Texas law, which, as discussed above, is insufficient.

Further, unlike the original DA defendants, DA Putman was never asked to stipulate against the enforcement of the challenged laws during the lawsuit. The closest Plaintiffs came was an attempted improper discovery request related to the dismissed SB8 defendants' discovery requests. *See* ROA.18860-61. But as the district

30

court explained, "[b]ecause the pre-*Roe* laws' validity is in dispute, it is not surprising that prosecutors would decline to answer whether they would enforce them." ROA.18861. Putman actually went further, as he acknowledged the Texas Court of Criminal Appeals' 1897 decision in *Moore* in briefing below. ROA.6134-35. *Moore* interpreted "furnishing the means" of an abortion as allowing for criminal liability for an individual who provides the abortion drugs or instruments directly to the woman or a medical provider for the purpose of causing an abortion. *Id.* at 290. (And the extensive authority recounted at Part I.B.1 and n.21 *supra* is consistent with that conclusion). No Plaintiff here has ever provided evidence that they intend to do that in one of the DA defendants' jurisdictions—instead, they consistently asserted that they wished to aid abortions legally occurring in other states. ROA.5563, 5564-65, 5566, 5568-69, 5571, 5573-74, 5574, 5576, 5577-78.

Plaintiffs also claim that Putman showed affirmative action toward enforcement by declining to immunize them from prosecution during the litigation. It is true that Plaintiffs attempted to get DA Putman to immunize them in exchange for their deposition testimony, but their demand for immunity was extremely broad. Plaintiffs demanded that Putman grant them "full immunity from any and all prosecutions under Texas law based on . . . information revealed by the individual during the depositions." ROA.18142, *see also* ROA.18143-44, 18147. Granting such broad immunity would have been unreasonable given that it was demanded simply to obtain their deposition testimony related to standing, an issue the Plaintiffs have the burden to prove. As the district court found, Putman's decision to decline this "broad" im-

munity "simply to obtain Plaintiffs' deposition testimony does not demonstrate willingness to enforce, given his duties to enforce Texas law and to the public." ROA.18864.

Below, Plaintiffs also claimed that Putman showed willingness by answering reporters' questions about the enforcement of abortion laws in general. But as the district court acknowledged (ROA.18862-63), Putman's answers do not indicate willingness to enforce, and his statements are consistent with his sworn testimony recounted above, which shows that he is unaware of any violations occurring and therefore has no plans to bring any cases involving abortion laws. *See* ROA.6129-31. Putman's overarching sentiment is that it is contrary to an elected DA's duties to make announcements picking and choosing which laws to enforce without making a judgment based on specific facts. *Id.*; *see also* ROA.18361-62. These facts do not indicate a willingness to enforce the pre-*Roe* laws against Plaintiffs sufficient to overcome sovereign immunity.

> **3. Ignoring a letter demanding a pre-enforcement legal evaluation of the applicability of a hundred-and-fifty-year-old statute does not show an affirmative act demonstrating willingness to prosecute.**

Before filing their Second Amended Complaint adding DA Putman and DA Stanek, various Plaintiffs claim to have sent letters to a few of the DA defendants, including DA Stanek, informing them of the earlier district court decision preliminarily enjoining enforcement of the pre-*Roe* laws in a few Texas counties. The purported letter to DA Stanek was only on behalf of Plaintiff West Fund. ROA.17075-76. According to West Fund's summary judgment evidence, as of August 2022 it

32

was an El Paso-based organization whose mission was to "provide direct and/or supportive funding to assist pregnant people seeking abortion services in El Paso, Texas; Ciudad Juarez, Chihuahua, Mexico; and throughout southern and eastern New Mexico." ROA.14862. The letter asked DA Stanek to confirm in writing, in light of the district court's opinion, that her "office does not intend to investigate or prosecute the provision of funding and practical support by West Fund to pregnant Texans who reside in Lubbock County." ROA.17270-84. Plaintiffs assert that DA Stanek never responded to this letter, Appellants' Br. at 10, but cite no evidence confirming that, nor that DA Stanek even received it. West Fund's declaration submitted in support of summary judgment does not even reference a letter. ROA.14862-64. And DA Stanek denied receiving it. *See* ROA.5572 at para.46, *see also* ROA.9353 at para.46 (denying allegation).

That is insufficient evidence at summary judgment to establish that Ms. Stanek ignored a letter from Plaintiff West Fund asking whether she would enforce the pre-*Roe* laws against them. But even assuming that there was evidence supporting this assertion, the district court was correct to conclude that given the unique history of the challenged laws here and uncertainty as to their enforceability, silence—without more—cannot satisfy the Plaintiffs' burden to show that DA Stanek has a "demonstrated willingness" to enforce the pre-*Roe* laws against these Plaintiffs or took "'some step to enforce' the statute." *Ogg*, 105 F.4th at 329 (citations omitted); *see* ROA.18861-62.

As a practical matter, allowing a DA to be haled into court because they declined to use their limited resources to research and opine on the hypothetical enforceability of 150-year-old state laws at the demand of random individuals outside the DA's jurisdiction is contrary to the principles underlying sovereign immunity. As DA Putman aptly explained when Plaintiffs' counsel pressed him to opine on the applicability of the pre-*Roe* laws during his deposition, DAs are concerned with prosecuting actual crimes; they "don't go through the Penal Code and look at each statute and see what we think about it. When a case is brought to us, then we analyze it and see what we need to do with it." ROA.18362.

### 4. Statements of other government officials are not binding on DA Putman and DA Stanek and provide no evidence as to those officials' probable enforcement.

Plaintiffs repeatedly point to statements made by the Texas Attorney General to support their contention that the Court should presume—without evidence—that the DA defendants will enforce the pre-*Roe* statutes against them. Appellants' Br. at 15-16. But "there is no dispute that Paxton has no authority to enforce the state's pre-*Roe* laws." *Fund Tex. Choice*, 658 F. Supp. 3d at 402. As a matter of Texas law, the Attorney General's opinions as to the enforceability of laws he has no authority to enforce are not binding on any Texas DA. While district attorneys and county attorneys are part of the Judicial Department of Texas government, the Attorney General is part of the Executive Department. Tex. Const. art. IV § 1. DAs do not report to the Attorney General, but instead are accountable to the Judicial Department. *See* Tex. Gov't Code §81.011; Tex. Local Gov't Code §§87.001, .012.

Whether or not to bring a prosecution is up to a particular prosecutor according to state law. *See Meshell*, 739 S.W.2d at 254.

This is also true as a matter of undisputed fact. As DA Putman testified, "[t]he Attorney General of Texas has no legal authority over my office's evaluation of whether to bring charges in any particular case." ROA.18355. DAs do not "typically seek guidance from anyone else, the Attorney General's office, [or] other DAs," but "typically [they] just do the research and decide on [their] own." ROA.18367. "The AG's opinions aren't authoritative anyway, so oftentimes they don't help you too much." *Id.* And Putman testified that his opinion as to whether he should bring charges in a case brought to him under the pre-*Roe* statutes is made independent of any influence by the Attorney General. ROA.18362. The Attorney General's opinions as to enforceability are thus irrelevant to identifying evidence of "willingness" to enforce by the DA defendants.

### C. Neither DA Putman nor DA Stanek has "compelled" or "constrained" the Plaintiffs.

As to the third guidepost, like the *Ogg* plaintiffs, Plaintiffs argue that the mere "existence of the challenged statutes coupled with [the DA defendants'] authority to prosecute criminal cases constrained the Plaintiffs because of their fear of prosecution." *Ogg*, 105 F.4th at 332. But Plaintiffs' fear of prosecution under the pre-*Roe* statutes is "insufficient to demonstrate compulsion or constraint under our *Ex parte Young* precedent," even if it were sufficient for standing purposes. 105 F.4th at 332. The Court must "focus [its] attention on [the DA defendants'] actions," and Plaintiffs' fear does not change the fact that neither DA Putman nor DA Stanek (nor any

35

other DA defendant) "has not done or threatened to do anything," as explained above. *Id.* Again, "'the mere fact that the [state official] *has* the authority to enforce [the challenged statute] cannot be said to 'constrain' the party challenging the statute." *Id.* (citation omitted).  This is critical because "if the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation," and that is the very purpose of the *Ex parte Young* exception. *Id.* at 332 (quoting *Scott*, 28 F.4th at 672). Yet here, as in *Ogg*, because the DA defendants have done nothing to indicate they will enforce the pre-*Roe* statutes against Plaintiffs, Plaintiffs have "failed to demonstrate that [the DA defendants] ha[ve] acted or will likely act in a way that would compel or constrain the Plaintiffs in order to 'strip' [the DA defendants] of [their] sovereign immunity." 105 F.4th at 332-33; *accord City of Austin*, 943 F.3d at 1001-02 (without "specific enforcement actions of the respective defendant state officials," there is no "compulsion or constraint" on the part of those officials). The third guidepost therefore tips in favor of the DA defendants. Thus, under the facts in this case, DA Putman and DA Stanek are improper *Ex parte Young* defendants.

## II.   Plaintiffs Lack Standing to Sue DA Putman and DA Stanek.

While not identical, Article III standing analysis and *Ex parte Young* analysis "significantly overlap." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing.  *Texas v. United*

*States*, 50 F.4th 498, 513–14 (5th Cir. 2022) (footnote omitted). "To do so, they 'must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *Id.* (footnote omitted). Plaintiffs must make this showing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (citation omitted). At summary judgment, they "can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" *Id.*

### A. Plaintiffs lack an injury in fact as to DA Putman and DA Stanek.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Plaintiffs do not claim that the law at issue has ever been enforced against them before by any DA defendant, including DA Putman and DA Stanek. Where a plaintiff raises a pre-enforcement challenge to a federal statute, the injury-in-fact requirement is satisfied where the plaintiff shows a serious "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted); *see also, e.g., Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) (requiring a "serious intention to engage in conduct proscribed by law"). In a pre-enforcement challenge, "a plaintiff must show that "the threat of future enforcement of the [challenged policies] is substantial." *Barilla v. City of Houston*, 13

37

F.4th 427, 431–32 (5th Cir. 2021). The record demonstrates that Plaintiffs cannot meet their burden to establish standing.

### 1. Plaintiffs failed to satisfy their burden to prove that they intend to engage in a course of conduct that could trigger prosecution by Putman or Stanek under the pre-*Roe* laws.

#### a.  Lubbock County

Plaintiffs offered no evidence at summary judgment indicating any specific intention to engage in conduct in Lubbock County that could subject them to prosecution under the pre-*Roe* laws. At most, each Plaintiff expressed a desire to aid "Texans seeking abortions in states where it is legal." *See* ROA.14849 (TEA Fund); ROA.14854 (Frontera Fund); *see also* ROA.14852 (Frontera Fund seeks to "make abortion accessible in the Rio Grande Valley"); ROA.14863 (West Fund); *see also* ROA.14879-92 (testimony pertaining to Fund Texas Choice, Lilith Fund, and Jane's Due Process referring only to desired activities to help "Texans"); ROA.14898 (CASN aids individuals "from the Houston area"); ROA.14903 (Dr. Moayedi fears "taking care of Texans in other states"); ROA.14906 (Buckle Bunnies "provides funding assistance to people who are seeking to travel out of the State of Texas to obtain legal abortions").

This evidence is insufficient to establish standing to sue DA Stanek, whose only jurisdiction is Lubbock County. Stating intentions to help "Texans" without any information as to where or when is too vague to satisfy the injury-in-fact requirement of Article III. As the Supreme Court explained in *Lujan*, at the summary-judgment

38

stage, a profession of "'some day' intentions [to engage in certain conduct]—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury" required for standing." 504 U.S. at 564. *See also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (affidavit stating only that a plaintiff "wants to" go to locations subject to challenged regulations is a "vague desire" "insufficient to satisfy the requirement of imminent injury") (citing *Lujan*, 504 U.S. at 564)).

This Court's precedent is in accord. *Laufer v. Mann Hospitality* held that a plaintiff's assertion that she "plans to travel to Texas" and "intend[s] to travel all throughout the State, including Austin and the surrounding towns" "do not show enough of a concrete interest . . . to confer standing." 996 F.3d at 272. "Without sufficiently concrete plans" to engage in conduct that could trigger enforcement, Plaintiffs lack an injury in fact. *Id.* at 273; *see also White Hat*, 141 F.4th at 602 (plaintiffs that failed to plead an intent to engage in conduct "on the implicated land tract" lacked injury in fact); *Burnett*, 140 F.4th at 694 (declarations "merely stating the abstract" about intentions to engage in conduct that would subject plaintiffs to prosecution and using "conditional statements" to describe their desire to engage in the conduct are insufficient to establish injury in fact); *Dettelbach*, 105 F.4th at 713 ("'some day intentions' to make a silencer, without any concrete details concerning the type of silencer they will make or even *when* they will make it, is insufficient to establish injury in fact" in challenge to law regulating the manufacture of silencers); *cf. Woodlands Pride*, 168 F.4th at 306-07 (because plaintiff "does not seek to engage

39

in arguably proscribed conduct in [the jurisdiction of the DA appellant], the "claimed injury is not traceable to . . . the district attorney appellants.").

### b.   Smith County

The evidence in the record pertaining to Smith County is similarly sparse. Like Lubbock County, there is no evidence in the record demonstrating that any Plaintiff has previously, or intends in the future, specifically intends to engage in conduct in Smith County that could trigger enforcement by DA Putman. And when asked directly about it during discovery, even though it was their burden to provide evidence on standing, Plaintiffs still failed to provide any.

Plaintiffs CASN, Frontera Fund, and West Fund stipulated that they lack standing to sue DA Putman. ROA.18019-34. Plaintiff Buckle Bunnies admitted it has never done any work in Smith County and refused to answer whether it had ever assisted a woman residing in Smith County to obtain an abortion. ROA.18373, 18374. It also refused to answer whether it intends to do so in the future. ROA.18374-75.[22] Similarly, Fund Texas Choice refused to answer whether it has ever engaged in "any activity" in Smith County. ROA.18379. And Fund Texas Choice refused to answer any questions about actions it wishes to take in Smith County in the future that it believes

---

[22] Asserting the Fifth Amendment "has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production." *Page v. Cooke Cnty., Tex.*, 226 F.3d 643 (5th Cir. 2000) (quoting *United States v. Rylander*, 460 U.S. 752, 758 (1983)). Further, even if there were a valid interest in asserting the Fifth Amendment as to *past* actions that Plaintiffs feared could subject them to prosecution, there is no basis for them to believe that merely describing a plan or intention to engage in conduct in the *future* that they think might violate a statute would subject them to prosecution. *See Dettelbach*, 105 F.4th at 714 n.4.

could trigger prosecution. ROA.18380. Plaintiff Ghazeleh Moayedi, an abortion doctor, refused to answer whether she had ever provided an abortion to any resident of Smith County via telemedicine, whether she had ever performed an abortion in Smith County, or whether she had ever assisted a woman from Smith County in obtaining an abortion. ROA.18385. She admitted that her supposed fear of prosecution is not specific to Smith County, and is based simply on "helping Texans in states where abortion is legal"—in other words, not in Smith County, where abortion is *illegal* (like the rest of Texas). *Id.* Dr. Moayedi also admitted that she has no further evidence to show any past or future activity in Smith County other than what has already been submitted to the Court at ROA.7198-7201, which says nothing specifically about Smith County.[23] ROA.18386 (citing ROA.18504-07). Moayedi therefore has no evidence showing that she has or does "intend to facilitate out-of-state abortions for Texans from Smith County," nor that she intends to facilitate abortions *in* Smith County (the only place Putman has jurisdiction to prosecute).

The story is similar for the remaining plaintiffs. Jane's Due Process refused to answer whether it has ever engaged in conduct in Smith County that it believes might violate the laws that are challenged in this lawsuit. ROA.18393-94. It also refused to answer what conduct it wants to engage in that might violate the challenged laws or

---

[23] Dr. Moayedi also referenced a declaration filed in a Travis County case apparently challenging SB8. *See* ROA.18386 (citing ROA.18429-31). As a government official, DA Putman does not enforce SB8. Tex. Health & Safety Code §171.207(a). In any event, the declaration contains no information pertaining to activities—either past or planned—in Smith County.

subject it to prosecution by DA Putman. ROA.18392. Lilith Fund refused to provide evidence that it has any intention of engaging in activities or conduct that it believes might violate the laws challenged in this case. ROA.18399. Lilith Fund refused to even say what activities or assistance it has provided in the past anywhere in Texas. *Id.* Lilith Fund also refused to say whether it had ever engaged in *any activity* at all in Smith County. ROA.18399-40. Lilith Fund further refused to say whether it has ever engaged in conduct it believes or fears would allow Defendant Putman to prosecute it under the Texas laws challenged in this lawsuit or to provide any evidence that it desires to engage in any conduct in Smith County that it fears might subject it to prosecution by Defendant Putman. ROA.18400-01.

TEA Fund admitted that none of its employees work or reside in Smith County. ROA.18408. And TEA Fund confirmed that its desired conduct going forward is to "continue operating as we have in the past." *Id.* But there is no evidence that TEA Fund's "past" conduct includes anything in Smith County. TEA Fund claimed that it had assisted at least one person from Smith County in accessing abortion care before *Dobbs* but refused to say whether it has any written documentation to support that assertion. ROA.18405. In response to DA Putman's written discovery requesting asking for such documents, TEA Fund referred to several documents it produced, but none of these documents reference Smith County nor support the claim that any specific person in Smith County was assisted by TEA Fund. *See* ROA.18411-12 (referencing documents); ROA.18416-18510 (the referenced documents). TEA Fund confirmed that the documents listed above are TEA Fund's entire response to DA Putman's request for "documents sufficient to show [TEA Fund]'s operations

and activities in Smith County." ROA.18407. And it appears to be relying solely on its broad claim to desire providing "funding and travel assistance to pregnant Texans, wherever they live or are present in Texas (including in Smith County)" as sufficient for standing. *Id.*; ROA.18413. But that is not enough at summary judgment. In sum, none of the remaining Plaintiffs can show that they have, or will imminently, engage in conduct in Smith County which could trigger prosecution. *In re Gee*, 941 F.3d 153, 164–65 (5th Cir. 2019).

> **2. Plaintiffs failed to provide evidence showing any alleged injury due to enforcement of the pre-*Roe* statutes against them by Putman or Stanek is "certainly impending."**

Even if the meager evidentiary offering were enough to establish an injury, it is too speculative to satisfy Article III. The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly *impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409. Plaintiffs claim that they have stopped engaging in desired conduct. But parties "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416. The mere existence of an allegedly unconstitutional statute is not an injury sufficient to provide standing. *California*, 593 U.S. at 670-71; see also *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the power [of Article III courts] must be able to show, not only that the statute is invalid, but that he has sustained or

43

is immediately in danger of sustaining some direct injury as the result of its enforcement"). As discussed extensively above, no DA defendant, including DA Putman and DA Stanek, have ever enforced or threatened to enforce the pre-*Roe* statutes.

Aside from that, Plaintiffs' claimed injury will only occur if a speculative chain of events involving others not in this lawsuit occurs. "If [Plaintiffs'] allegation of harm involves a 'chain of contingencies'" then the Court "must follow" Supreme Court precedent and "identify each contingency prompting the self-censorship." *Glass*, 900 F.3d at 239. "Each link in the chain of contingencies must be 'certainly impending' to confer standing." *Id.* This is difficult to do, as courts are "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper*, 568 U.S. at 414; *accord California*, 593 U.S. at 675.

Plaintiffs' allegations of harm rest on multiple contingencies. In order for Plaintiffs to be prosecuted under the pre-*Roe* laws by DA Putman or DA Stanek, the following would have to occur: (1) someone in Lubbock or Smith County would have to call one of the Plaintiff organizations and request assistance in obtaining an abortion; (2) a Plaintiff organization would actually have to provide that assistance; (3) Lubbock or Smith County law enforcement would have to be made aware of this occurrence, (3) decide to investigate it, and (4) choose to bring the case to the DA's office; (5) the DA's office would have to review the evidence and determine that the pre-*Roe* statutes are still good law and would apply; and (6) DA Putman or DA Stanek would have to exercise their discretion, considering numerous factors, to bring charges. This is established by undisputed facts in the record. ROA.18354-55, 18361,

18362, 18364. Critically, *four* steps in this chain of contingencies involve the "decisions of independent actors" not before the Court: someone requesting assistance for an abortion from the Plaintiffs and law enforcement in each county. Whether Plaintiffs would ultimately face prosecution depends on the decisions of these actors, and because there is no evidence providing "certainty as to how these [actors] will exercise their future judgment," the alleged harm to Plaintiffs is "not certainly impending." *Glass*, 900 F.3d at 241.

This Court is "unwilling to assume a credible threat of future enforcement when that future enforcement is dependent upon decisions of third parties, who might one day proceed." *Burnett Specialists*, 140 F.4th at 694. It has therefore rejected standing for plaintiffs who would be subject to future enforcement only if someone else filed a charge so the defendant agency could act. *Id.; accord O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ((rejecting standing theory that "amounted to a claim 'that *if* [plaintiffs] proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed.'"); *see also Clapper*, 568 U.S. at 412 (rejecting standing of plaintiffs who "can only speculate as to how the Attorney General and the Director of National Intelligence will exercise their discretion in determining" what actions to "target.").

Here, there are *two* layers of actions by multiple third parties before the DA defendants could enforce the challenged laws against Plaintiffs, making Plaintiffs' claimed injury even more speculative than those already rejected by this Court.

### 3. Relaxed standing doctrine in First Amendment cases does not help the Plaintiffs.

Plaintiffs challenge the pre-Roe laws both on their face and as applied to the Plaintiffs. It is well-settled that "[w]hen a litigant brings both as-applied and facial challenges, [courts] generally decide the as-applied challenge first." *LIA Network v. City of Kerrville, Tex.*, 163 F.4th 147, 162 (5th Cir. 2025). "For an as-applied challenge, "[t]here must be some evidence that [a] rule would be applied to the plaintiff" to establish a sufficient threat of enforcement for injury purposes. *Id.* at 158. As already discussed, there is none.

But even if the Court looks to Plaintiffs' facial challenge, it will only find a "credible threat of enforcement" if the plaintiff "can show each the following: (1) that they 'intend[ ] to engage in a course of conduct arguably affected with a constitutional interest'; (2) that their conduct is 'arguably regulated' by the challenged policy; and (3) that 'the threat of future enforcement is *substantial*.'" *Burnett Specialists*, 140 F.4th at 695 (citations omitted) (emphasis added). Even if Plaintiffs could satisfy the first two criteria, it is already plain based on the facts that the third is not met.

While courts may assume that a law that facially applies to a plaintiff's conduct will be enforced against that plaintiff in the context of a pre-enforcement challenge to a law based on the First Amendment, that assumption has two large caveats that apply here: courts will do so only in cases where (1) the law at issue is "recently enacted" or "at least, non-moribund"; or (2) where there is an "absence of compelling contrary evidence." *Speech First*, 979 F.3d at 335. The pre-*Roe* statutes are not

46

recently enacted, have not been enforced since before *Roe* even though *Roe* was overruled, and there is additional compelling evidence suggesting that the DA defendants will not enforce the laws against Plaintiffs—Texas case law in *Moore*, and the uniquely "uncertain legal status" of the laws, as the district court described it. ROA.18863. Under these circumstances, it would be improper for the Court to assume—without any evidence—that any of the DA defendants will enforce the pre-*Roe* statutes against Plaintiffs merely because they exist.

### B. Plaintiffs failed to prove any injury "fairly traceable" to DA Putman or DA Stanek.

Even if Plaintiffs have concrete injuries, to have standing, they must also that their alleged injuries are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61. Where a plaintiff has provided no evidence of an intention to engage in arguably proscribed conduct in the jurisdiction of a DA defendant, this Court has held that there is no injury traceable to that defendant. *Woodlands Pride*, 168 F.3d at 306-07. And even where the plaintiff had "scheduled" activity in one of those jurisdictions, that was not enough without further information about that scheduled activity. *Id.* As discussed above, Plaintiffs failed to provide evidence of more than a vague intention to help "Texans" obtain abortions out of state at some point in the future. *See* Part II.A.1. *supra.* That does not provide evidence that any injury suffered by Plaintiffs is "traceable" to either DA Putman or DA Stanek.

### C. Plaintiffs' claimed harm is not redressable.

Plaintiffs must also show that it is "likely, as opposed to merely speculative, that the[ir] injur[ies] will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. When plaintiffs request an injunction or a declaratory judgment, as they must in order to bring a claim against a state official in his official capacity, *see Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988), they must show an ongoing injury in fact, or that a future injury is "certainly impending" or that there is a "substantial risk" that it might occur. *See Clapper*, 568 U.S. at 414 n.5; *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." (citation omitted)). To receive prospective relief—the only remedy permitted under *Ex parte Young*—Plaintiffs must meet their burden to show they are suffering *ongoing* harm.

But if there is no evidence Plaintiffs have any specific intent to engage in any activity in Lubbock or Smith County, much less any activity which would violate the pre-*Roe* laws, and no evidence that DA Putman has any intention of prosecuting the Plaintiffs under the pre-*Roe* laws and no other evidence suggesting that is likely to happen, there is no ongoing harm and simply no need for relief. Even if a declaratory judgment might "deter the risk of future harm," "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). "[T]he declaratory judgment device does not ... permit litigants to

48

invoke the power of this Court to obtain constitutional rulings in advance of necessity." *California*, 593 U.S. at 672 (citation omitted). Again, the mere existence of a law that Plaintiffs claim is unconstitutional is insufficient to provide a basis for relief. *Id.* at 670–71. Plaintiffs lack Article III standing.

## Conclusion

The Court should affirm the district court's order granting summary judgment to DA Putman and DA Stanek, either because sovereign immunity bars Plaintiffs' claims against them, because Plaintiffs lack standing to sue them, or both.

Respectfully submitted.

/s/Heather Gebelin Hacker
Heather Gebelin Hacker
HACKER STEPHENS LLP
108 Wild Basin Road South
Suite 250
Austin, Texas 78746
(512) 399-3022 (phone)
heather@hackerstephens.com

*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

On April 27, 2026, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1.

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12846 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the program used for the word count).

/s/ Heather Gebelin Hacker
HEATHER GEBELIN HACKER